# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1313

_____

Leonard Reed,      *
     *
       Appellee,      *
     *    Appeal from the United States
     v.      *    District Court for the Southern
     *    District of Iowa.
John Thalacker, Warden,      *
and State of Iowa,      *
     *
       Appellants.      *

_____

Submitted: October 20, 1999

Filed: December 30, 1999

_____

Before McMILLIAN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit
Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Leonard Reed was convicted in state court of second-degree sexual abuse and child endangerment, and was sentenced to concurrent terms of twenty-five years and two years. The district court[1] granted Mr. Reed's petition under 28 U.S.C. § 2254(a), holding that the admission of hearsay evidence at his trial violated Mr. Reed's rights to

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

confrontation and to due process, and that the admission of the evidence was not harmless. The state appeals. We affirm the district court's judgment.

I.

Mr. Reed and Mary Reed are the parents of three children including VR, who was two years old at the time of the alleged assault. Mr. and Ms. Reed went through an acrimonious divorce. Physical custody was awarded to Ms. Reed, and Mr. Reed had overnight visitation rights with the children every other weekend. Ms. Reed testified that on one occasion when VR returned from a weekend visit with Mr. Reed, VR was "jittery" and complained of pain in her genital area. Ms. Reed noticed that VR's genital area was red, irritated, and puffy. Ms. Reed testified that, while she was changing VR's diapers, VR said that "Daddy hurt me down there." VR's babysitter testified that VR made a similar statement to her later that day.

VR spent another weekend with her father two weeks later, and again had an inflamed genital area when she returned home. VR again told Ms. Reed that her father had hurt her. After consulting with the babysitter, Ms. Reed took VR to the hospital, where VR was given a medical examination. During the course of this examination, VR refused to speak with the doctor, but Ms. Reed told the doctor that VR had said that her father hurt her.

At the subsequent criminal trial of Mr. Reed, the state prosecutor questioned Ms. Reed and the babysitter about the alleged statements made by VR, over the objection of defense counsel. The prosecutor also questioned the doctor who examined VR about what Ms. Reed told him, and in particular about what she had heard from VR. The trial court again overruled defense counsel's hearsay objection, but cautioned the jury that the doctor's testimony regarding VR's statements to Ms. Reed were not being offered for their truth, but rather to show how the doctor arrived at the conclusion that VR had been sexually abused. After Mr. Reed's conviction, an evenly divided Iowa Court of Appeals affirmed the conviction without opinion. The Iowa Supreme Court declined further review.

II.

The state first argues that the district court erred in concluding that the admission of VR's statements to Ms. Reed and the babysitter violated Mr. Reed's sixth amendment right to confront his accusers. The state contends that these statements were within the excited utterance exception to the hearsay rule. A question of "[w]hether admission of hearsay evidence violated a defendant's Sixth Amendment right of confrontation is a mixed question of law and fact" that we review de novo. Gochicoa v. Johnson, 118 F.3d 440, 445 (5th Cir. 1997), cert. denied, 118 S. Ct. 1063 (1998).

The sixth amendment guarantees accused persons the right to be confronted with the witnesses against them. Although the admission of hearsay statements implicates the confrontation clause, it is satisfied "where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule." White v. Illinois, 502 U.S. 346, 356 (1992). One such category of exempt statements is excited utterances, which are "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). The rationale of the excited utterance exception is that "the stress of nervous excitement or physical shock ' "stills the reflective faculties, " ' thus removing an impediment to truthfulness." United States v. Sewell, 90 F.3d 326, 327 (8th Cir. 1996), cert. denied, 519 U.S. 1018 (1996), quoting United States v. Elem, 845 F.2d 170, 174 (8th Cir. 1988), itself quoting 6 John Henry Wigmore, Evidence § 1747, at 195 (James H. Chadbourn rev. 1976).

For the excited utterance exception to apply, the declarant's condition at the time of making the statement must be such that "the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." United States v. Iron Shell, 633 F.2d 77, 86 (8th Cir. 1980), cert. denied, 450 U.S. 1001 (1981). We have held that to determine whether a declarant was still under the stress of excitement when he or she made a statement, we may consider the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the

age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement. United States v. Moses, 15 F.3d 774, 777-78 (8th Cir. 1994), cert. denied, 512 U.S. 1212 (1994). The state has the burden of demonstrating that a hearsay exception is applicable. See Idaho v. Wright, 497 U.S. 805, 816 (1990).

The difficulty for the state in this case is that the record fails to establish that VR's statements to her mother and the babysitter occurred while VR was under the continuing stress of the alleged sexual assault. Most important, the record does not reveal how much time elapsed between the alleged assaults and VR's statements. On both weekends in question, VR stayed with her father for two full days before returning home. The alleged assault could have occurred at any time in the 48 hours prior to VR's statements. Indeed, the record shows that VR had been having difficulties with genital rashes for five months prior to the two weekends in question. The assault to which VR refers in her alleged statement could therefore have occurred months before the relevant weekends.

We recognize that the lapse of time between the startling event and the statement is not always dispositive in determining whether testimony should be admitted under the excited utterance exception. See Iron Shell, 633 F.2d at 85. We are aware, too, that some state courts have found statements to be excited utterances even though the statements were made by young alleged victims of sexual abuse as much as two or three days after the events at issue. See, e.g., State v. Smith, 909 P.2d 236, 241 (Utah 1995) (38 hours); State v. Plant, 461 N.W.2d 253, 264 (Neb. 1990) (two days); State v. Galvan, 287 N.W.2d 344, 347 (Iowa 1980) (two days); State v. Rogers, 428 S.E.2d 220, 226 (N.C. Ct. App. 1993), cert. denied, 511 U.S. 1008 (1994) (three days); and State v. Padilla, 329 N.W.2d 263, 265, 267 (Wis. Ct. App. 1982) (three days).

These courts have emphasized that in the case of young children, the "lack of capacity to fabricate rather than the lack of time to fabricate," Plant, 461 N.W.2d at 264 (internal citations omitted), is the dispositive consideration in the application of the

exception. It is supposed that children in their tender years are less likely to fabricate a claim of sexual abuse because of their unfamiliarity with the subject matter, and their limited capacity for conscious reflection motivated by self-interest. See, e.g., id. at 264-65.

Frankly, we are not as sanguine as these courts about the incapacity of children to fabricate or "recall" imaginary events. In any case, we believe that the days or even months that could have elapsed between the events in question and VR's alleged statement render the excited utterance exception inapplicable. Even if it were true that infants are less likely to utter a lie borne of self-interest, which we doubt, it seems to us that infants are also significantly more likely to deliver a distorted recollection. Such distortions can occur through deliberate coaching, inadvertent suggestion, confusion of fact and fantasy, or a simple defect in memory. See Maryland v. Craig, 497 U.S. 836, 868 (1990) (Scalia, J., dissenting); see also John R. Christiansen, The Testimony of Child Witnesses: Fact, Fantasy, and the Influence of Pretrial Interviews, 62 Wash. L. Rev. 705, 709-11 (1987).

We cannot see how a two year-old's "excited" recollection of an event that happened days or even months earlier can be considered so inherently trustworthy that no opportunity for cross-examination is needed to satisfy the constitutional right of confrontation. We therefore agree with the district court that, because the trial court admitted VR's statements into evidence without developing an adequate record regarding its trustworthiness, its decision was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see 28 U.S.C. § 2254(d)(2).

## III.

Having found that the admission of the hearsay testimony of Ms. Reed and the babysitter was impermissible, we consider now whether Mr. Reed is entitled to any relief. In most habeas corpus cases we review the record to decide "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict,' "

Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353 (1993), quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946). In this case, however, because the state courts did not review the admission of the hearsay testimony for harmless error, we apply the more exacting standard of review set forth in Chapman v. California, 386 U.S. 18, 24 (1967). See Richardson v. Bowersox, 188 F.3d 973, 978-79 (8th Cir. 1999); see also Beets v. Iowa Department of Corrections Services, 164 F.3d 1131, 1134-35 n.3 (8th Cir. 1999), cert. denied, 120 S. Ct. 75 (1999). Under Chapman, 386 U.S. at 24, 87 S. Ct. at 828, an error is harmless only if there could be no reasonable doubt that the error's admission failed to contribute to the jury's verdict. We note, too, that the state acknowledges in its brief that Chapman is the appropriate standard of review.

Although the state presented medical evidence suggesting that VR was sexually abused, there was almost no evidence other than the hearsay statements discussed above that identified Mr. Reed as the abuser. Although the doctor's testimony included VR's statement to her mother, this testimony was not admitted for its truth, and thus can do nothing to make the improper admission of VR's statements harmless. We note, contrary to the state's suggestion, that the doctor's testimony could not have been admitted under the medical diagnosis exception. The testimony of the doctor contained double hearsay: the doctor was relating what Ms. Reed told him about what VR told Ms. Reed. As the internal hearsay (what VR told Ms. Reed) was inadmissible, the doctor's testimony was also inadmissible, even if the medical diagnosis exception covers what Ms. Reed told the doctor (which is questionable, since Ms. Reed was not the doctor's patient).

The only direct evidence of Mr. Reed's guilt that we discern, other than the improperly admitted hearsay, is the testimony of Shane Reed, the son of Mr. Reed, that VR told Shane that her daddy had hurt her. Although defense counsel consistently objected to earlier attempts to introduce similar hearsay testimony through Ms. Reed, the babysitter, and the doctor, no objection was made to this particular testimony. It might be that defense counsel's continuous objections to similar hearsay testimony

constituted a standing objection to the hearsay and preserved this issue for appeal. If so, we would conclude that Shane's hearsay testimony was inadmissible for the reasons given above.

Even assuming arguendo, however, that Shane's testimony may be considered in determining whether the admission of the other evidence was harmless, we do not believe it to be so strong that the improperly admitted hearsay statements are merely cumulative to it. It seems to us that Shane's credibility was highly questionable. There is significant evidence that Shane had a contentious relationship with his father. Shane admitted to removing property from Mr. Reed's house without permission, and Mr. Reed had a confrontation with Shane which led to child endangerment charges being filed against Mr. Reed.

We note that even if Shane was perfectly reliable, moreover, the statement made to him by VR was not. There was no indication as to when VR made her statement to Shane, what her condition was at the time of making the statement, and how much time elapsed since any alleged assault when VR made her statement. It seems to us therefore that there was a reasonable possibility that the jury, even if allowed to consider Shane's testimony, would not have convicted Mr. Reed if it had not heard the improperly admitted hearsay. We conclude, accordingly, that the admission of the hearsay testimony of Ms. Reed and the babysitter was not harmless. Indeed, given the very damaging nature of the improper testimony in this case, we believe that even if the less exacting scrutiny of Brecht were the applicable standard, reversal of Mr. Reed's conviction would still be appropriate.

IV.

For the foregoing reasons the decision of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.