# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4235

_____

United States of America,

        Appellee,

v.

Antonio Clemmons,

        Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.
\*
\*
\*

_____

Submitted: May 19, 2006
Filed: August 29, 2006

_____

Before WOLLMAN, BOWMAN, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Antonio Clemmons pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He appeals from his conviction, contending that the district court[1] erred in denying his motion to exclude statements, that the district court imposed a sentence in violation of the Ex Post Facto and Due Process clauses, and that the district court erred in classifying his Missouri felony conviction for first degree tampering as a crime of violence. We affirm.

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

# I.

On August 30, 2002, Jamil Williams reported a burglary of his apartment to the Independence, Missouri, police department, stating that a Smith & Wesson .40 caliber semi-automatic pistol, serial number PAZ6099, was one of the items stolen. Williams told the police that he believed that Clemmons had burglarized his apartment and that he had seen Clemmons outside of the apartment, though not on the date in question.

On October 20, 2002, Officers Steven Lester and Lawrence Cory were dispatched to an address in Kansas City, Missouri. When they arrived, they found Williams lying on the ground with a pool of blood gathering on his right leg. Officer Lester testified that Williams was talking on his cell phone in a calm voice. Officer Lester, who could tell that Williams had been shot, approached Williams and asked him to end the call. Williams did so, whereupon Lester asked Williams who had shot him. Williams answered that Antonio Clemmons had shot him and had stolen his Mac-11 pistol. Williams verified the identification of his assailant by telling the officers that Clemmons had attempted to rob him a month earlier in Independence. The Mac-11 pistol stolen from Williams was a Cobray, Model PM-11, 9mm semi-automatic pistol, serial number 940022835

Between October 20, 2002, and October 31, 2002, Clemmons gave Eugene Calvert a Smith & Wesson pistol, serial number PAZ6099, in exchange for marijuana. After Calvert was arrested and law enforcement officers recovered the pistol, Calvert told the officers that he had received the gun from a man known as "40." An examination of the firearm revealed that it matched two cartridge cases recovered from the scene of the Williams shooting. The officers learned that the moniker "40" corresponded to the name Antonio Clemmons and established surveillance at the residence where they believed Clemmons had been staying. On November 12, 2002, Clemmons was arrested for assault and robbery as he left the residence.

A detective returned to the address and asked for consent to search the premises. A resident consented to the search and showed the detective the room where Clemmons had been staying. The detective found a Mac-11 pistol, serial number 940022835, on the shelf.

On December 5, 2003, Williams was murdered. Clemmons, who was incarcerated in the Jackson County jail at the time, was released because the only witness to the assault and robbery, Williams, had died.

In a superseding indictment, Clemmons was charged with (1) being a felon in possession of a Cobray, Model PM-11, 9mm semi-automatic pistol, and (2) being a felon in possession of a Smith & Wesson .40 caliber semi-automatic pistol. Clemmons entered a conditional guilty plea to count one of the superseding indictment, reserving the right to appeal the district court's denial of his pretrial motions.

The Presentence Investigation Report (PSR) recommended a base offense level of 24 because Clemmons had previously sustained two felony convictions for crimes of violence, including a Missouri conviction for tampering in the first degree. The PSR also recommended a two-level enhancement because the firearm was stolen, a four-level enhancement because the firearm was used in connection with another felony offense, and a two-level reduction for acceptance of responsibility. Explaining the four-level enhancement, the PSR stated that:

> Clemmons was involved in the burglary of Jamil Williams' residence (at which time he stole the firearm), the aggravated assault of Jamil Williams (at which time he shot Williams with the gun he had previously stolen from him), and the robbery of Jamil Williams (at which time he stole the second firearm).

Clemmons objected to the characterization of first-degree tampering as a crime of violence and to the enhancements recommended in the PSR.

The district court ruled that Clemmons's prior conviction for tampering qualified as a crime of violence and that his base offense level was 24. The district court applied the recommended enhancements and reduction, resulting in a total offense level of 28. With a criminal history category of VI, the district court determined that Clemmons's sentencing range was between 140 and 175 months, but that the statutory maximum of 120 months controlled. The district court sentenced Clemmons to 120 months' imprisonment.

## II.

Clemmons argues that the district court erred in denying his pretrial motion to exclude the statements made by Williams to Officer Lester on October 20, 2002.

## A.

We review *de novo* the denial of an objection to the admission of evidence based on the Confrontation Clause of the Sixth Amendment. United States v. Brun, 416 F.3d 703, 706 (8th Cir. 2005).

The Sixth Amendment states that in all "criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53-54 (2004). The Court declined, however, to offer a comprehensive definition of "testimonial," stating that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a

-4-

preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68.

In Davis v. Washington, the Supreme Court revisited the Confrontation Clause and distinguished between testimonial and nontestimonial statements in the context of police interrogations. 126 S. Ct. 2266 (2006). There, the trial court had admitted into evidence a recording of a victim's exchange with a 911 operator. The Supreme Court affirmed, holding that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution.

Id. at 2273-74. The Court went on to draw distinctions between the interrogations in Crawford and Davis, noting that the nature of the questions in Davis elicited answers that were necessary to be able to resolve the ongoing emergency. Davis, 126 S. Ct. at 2276. "That is true even of the operator's effort to establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon." Id.

Viewing the facts in the light of the Supreme Court's decision in Davis, we conclude that Williams's statements to Officer Lester were nontestimonial. The circumstances, viewed objectively, indicate that the primary purpose of Lester's questions was to enable him to assess the situation and to meet the needs of the victim. Officer Lester testified that he had parked his vehicle several houses away from the address to which he was dispatched "due to the fact that there could be a party armed." Sentencing Tr. at 15. When the officers arrived at the scene, Williams was lying in front of a neighbor's house, suffering from multiple gunshot wounds. Officer Lester

further testified that his purpose in speaking to the victim was, "[t]o investigate, one, his health to order him medical attention and, two, try[] to figure out who did this to him." Sentencing Tr. at 16-17. Any reasonable observer would understand that Williams was facing an ongoing emergency and that the purpose of the interrogation was to enable police assistance to meet that emergency. Accordingly, because Williams's statements were nontestimonial, they do not implicate Clemmons's right to confrontation.

**B.**

The district court determined that the excited utterance exception to the hearsay rule applied to Williams's statements and denied Clemmons's motion to exclude. We review the district court's evidentiary ruling for abuse of discretion. United States v. Water, 413 F.3d 812, 818 (8th Cir. 2005).

Rule 803 (2) of the Federal Rules of Evidence provides that excited utterances, statements relating to a startling event and made while under the stress of excitement caused by the event, are not excluded by the hearsay rule. "For the excited utterance exception to apply, the declarant's condition at the time of making the statement must be such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." Reed v. Thalacker, 198 F.3d 1058, 1061 (8th Cir. 1999) (internal quotation omitted). In determining whether a declarant was still under the stress of excitement when he made the statement, we consider "the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement." Id.

Given the circumstances and nature of the conversation, we conclude that the district court did not abuse its discretion in ruling that the hearsay statements were

admissible as excited utterances. Although Officer Lester testified that Williams was talking on his cell phone in a calm manner, Williams had suffered five gunshot wounds and lay bleeding on the ground. As the district court stated, "[i]t would be unreasonable to conclude that someone recently suffering multiple gun-shot wounds and awaiting the arrival of paramedics is so nonchalant ab[o]ut his condition that he is likely to calculate who he might unfairly blame for his injuries." D. Ct. Order of June 28, 2005, at 3. We agree, and we thus affirm the district court's order denying Clemmons's motion to exclude Williams's statements.

## III.

Clemmons next argues that his sentence violates his right to fair warning under the Ex Post Facto and Due Process clauses. He contends that the district court erred in applying Booker's remedial holding to an offense that predated the Supreme Court's decisions in Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005), and that the resulting sentence was unforeseeable. Clemmons argues that the Sixth Amendment requires that the district court sentence him under the mandatory guidelines based on facts found by the jury or admitted by him and that the district court erred in applying sentencing enhancements (1) for the use of the firearm in connection with another felony offense and (2) for the stolen nature of the firearm. We review *de novo* Clemmons's constitutional challenges. United States v. Wade, 435 F.3d 829, 831 (8th Cir. 2006) (per curiam).

After Clemmons filed his appeal, we rejected these exact arguments in United States v. Wade. 435 F.3d at 832. First, the Ex Post Facto Clause does not apply here because the changes wrought by Booker were by judicial decision, not by statute. Id. Although due process concerns require that the application of judicial decisions to a pending case complies with the "concepts of notice, foreseeability, and, in particular, the right to fair warning," Rogers v. Tennessee, 532 U.S. 451, 459 (2001), the Supreme Court directed the courts below to apply the Booker holdings—"both the

Sixth Amendment holding and [the] remedial interpretation of the Sentencing Act—to all cases on direct review." Booker, 543 U.S. at 268. We thus reject Clemmons's constitutional claims and reiterate the conclusion reached in Wade, "the Supreme Court would not direct us to violate the Constitution." Wade, 435 F.3d at 832.

## IV.

Finally, Clemmons argues that the district court erred in finding that his 1990 Missouri state conviction for tampering in the first degree was a crime of violence. We review *de novo* whether a prior conviction constitutes a crime of violence under the sentencing guidelines. United States v. Bockes, 447 F.3d 1090, 1092 (2006).

Under Missouri law, a person commits the crime of tampering if he "knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile . . . without the consent of the owner thereof." Mo. Rev. Stat. § 569.080.1 (2). The statute thus criminalizes both tampering by operation and tampering by possession. In United States v. Bockes, we held that tampering by operation in violation of Missouri law constituted a crime of violence under § 4B1.2 of the U.S. Sentencing Guidelines. 447 F.3d at 1092-93.

Clemmons does not argue that he was tampering by possession, but rather urges us to reconsider our holding that tampering by operation is a crime of violence. Appellant's Br. at 26 ("Clemmons's offense involved knowingly and without the consent of the other unlawfully operating an automobile.") This panel, however, cannot overrule the decision of a prior panel, United States v. Sun Bear, 307 F.3d 747, 753 (8th Cir. 2002), and Clemmons's state conviction thus qualifies as a crime of violence.

The judgment is affirmed.

_____