# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2508

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Zeronical Rice, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: May 9, 2011
Filed: July 5, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

A jury found Zeronical Rice guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Rice appeals, arguing that the district court[1] improperly applied the "excited utterance" hearsay exception, Federal Rule of Evidence 803(2), to permit inadmissible hearsay evidence at his trial. We affirm.

_____

[1]The Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of Arkansas.

I.

Around midnight on February 16, 2007, Martha Jones dialed 911. She and her son, Rice, were in a "heated argument" and, according to the 911 operator, Jamie Bigelow, Jones said that Rice was hitting her and had a gun.

Bigelow dispatched Officer Adam Warford to Jones's home. When he arrived just minutes later, he found an "agitated" Jones, who told him that she and Rice had been in an argument, that it had "gotten very heated," that Rice "had left and come back a short time later," and that when he returned he had a gun, pointed it at her, and threatened to kill her. Trial Tr. at 32:9-15. Officers later found Rice at a neighbor's house, sitting on a couch. After Rice was arrested, the officers lifted the cushions off the couch and found a gun.

At trial, the government called Bigelow and Warford to testify to what Jones had said to them that night.[2] Bigelow—over Rice's hearsay objection[3]—testified:

A.      I remember the specific call because it took me a minute to get information. It was very difficult to get information from her, the address, information I needed to dispatch the police officers, due to them both yelling at each other.

Q.      So your recollection is -- can you describe Ms. Jones' state when she was on the phone with you, her demeanor?

---

[2]Although Jones was called by and testified for the government, she denied ever saying that Rice had a gun, Trial Tr. at 62:8-13, 79:14-22, or even seeing a gun, id. at 70:2-11.

[3]Rice has abandoned on appeal his trial-based objection that the admission of Bigelow's and Warford's testimony violated his Confrontation-Clause rights.

A.     Just very upset. It was hard to get her attention to me to answer my questions that I needed answered.

Q.     And exactly how did the phone call begin?

A.     The phone call began, as I answered "911," I could immediately hear them arguing and yelling. . . . And as I struggled to get the information as far as where they were at, the address to send the officer, he was yelling at her.

Q.     When you say "he," can you clarify as to how you know who was yelling at whom and who was making the phone call?

A.     Yes. . . . Zeronical Rice was the one that was yelling at her. *She stated it was her son.* . . . And at one point during the phone call I heard what sounded like somebody hitting her. *And she stated that he had hit her.* A normal question in a disturbance call would be does that subject have weapons. . . . *And she stated that he had a gun.*

Q.     And you say "he." Did she tell you --

A.     *She stated Zeronical had a gun and that he had hit her.*

Trial Tr. at 19:19-20:18 (emphases added).

Officer Warford told the jury what happened next:

Q.     Can you tell us whenever you encountered Ms. Jones what her demeanor was like?

A.     She was obviously agitated and in pain. Her tone of voice was of a person who was very excited. You know, she was, like I said, her face was swollen up, and she appeared to be grimacing as if it was hurting her. She was very animated, and her arms were moving around. She was angry.

Q. And why do you say she was angry?

A. Just her demeanor, her behavior, waving her arms around. Her voice was elevated. I mean, she was talking louder than normal. She was talking quickly.

Q. And how long was it between the time that you were dispatched and the time you arrived at the scene?

A. I can't recall exactly. But I would have been -- on a Friday night, I would have been in that area already, less than two minutes, had to have been.

Id. at 30:23-31:13. Then—over Rice's objection—Warford went on to recount how Jones had told him about the argument and her son's possession of a gun. Id. at 32:9-15.

The district court concluded that Jones's statements to Bigelow and Warford, while hearsay, could nevertheless be admitted as excited utterances under Federal Rule of Evidence 803(2). The jury later found Rice guilty of being a felon in possession of a firearm. On appeal, Rice argues that it was error not to exclude the hearsay statements because the government failed to demonstrate that the excited-utterance exception applied. He asks that we reverse his conviction and remand the case for a new trial.

II.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Hearsay is not admissible," with certain exceptions. Fed. R. Evid. 802. One such exception is an "excited utterance," that is, "A statement relating to a startling event or condition made while the declarant was under the stress of

-4-

excitement caused by the event or condition." Fed. R. Evid. 803(2). When a hearsay statement qualifies as an excited utterance, Federal Rule of Evidence 802 does not bar its admission.[4]

Bigelow and Warford each testified that Jones had told them that Rice was in possession of a gun the night of February 16, 2007. Because Jones's statements to Bigelow and Warford were not, of course, made "while testifying at the trial," and because those statements, as repeated by Bigelow and Warford at trial, were offered for their truth, *i.e.*, to prove that Rice did in fact possess a gun, they are hearsay.

When the government offers hearsay as evidence, it bears "the burden of demonstrating that a hearsay exception is applicable." Reed v. Thalacker, 198 F.3d 1058, 1061 (8th Cir. 1999). We review a district court's decision to admit that evidence for abuse of discretion only. See United States v. Phelps, 168 F.3d 1048, 1054 (8th Cir. 1999).

"For the excited utterance exception to apply, the declarant's condition at the time of making the statement must be such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." Reed, 198 F.3d at 1061 (internal quotation marks omitted). This standard animates the theory behind the exception, which "is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." Advisory Committee's Note on Fed. R. Evid. 803(2). The district court's task, therefore, was to determine whether the declarant, in this case Jones, was "under the stress of excitement caused by" the escalating argument with her son, Rice. Fed. R. Evid. 803(2). To that end:

---

[4]It might, of course, be excluded for other reasons, none of which are raised in this appeal.

We have held that to determine whether a declarant was still under the stress of excitement when he or she made a statement, we may consider the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement.

Reed, 198 F.3d at 1061.

Reviewing the relevant circumstances surrounding Jones's two out-of-court statements implicating Rice in the possession of a firearm, we conclude that the district court did not abuse its discretion when it admitted them for their truth under the excited-utterance exception.

Jones's first statement, made to Bigelow during the 911 call, was contemporaneous with the startling event. As Bigelow testified, the argument was ongoing at the time Jones placed the call, and it continued during the call. Indeed, Bigelow testified that it took longer than normal for her to get information from Jones and "[i]t was hard to get [Jones's] attention" because Jones and Rice were still "yelling at each other" and Jones was "[j]ust very upset." Trial Tr. at 19:19-20:1. Additionally, at one point during the call, Bigelow heard what she thought was someone hitting Jones, at which point Jones said that Rice "had hit her." Id. at 20:9-16. Furthermore, even though it appears that Jones's statement that Rice "had a gun" was made in response to Bigelow's inquiry about whether Rice had "weapons," see id., we are not persuaded that Bigelow's inquiry suddenly transformed Jones's condition from "spontaneous, excited or impulsive" to "reflecti[ve] and deliberati[ve]." Reed, 198 F.3d at 1061. Given the circumstances—the 911 call, the ongoing "heated argument," the contemporaneous physical attack on the declarant, and the 911-operator's statement that the declarant was "[j]ust very upset"—we cannot conclude that the district court abused its discretion when it admitted Jones's statement to Bigelow as an excited utterance.

-6-

Nor does it appear that Jones's "stress of excitement" had abated by the time she made her statement to Warford just a few minutes later. As Warford testified, Jones was "obviously agitated and in pain," her face having "swollen up, and she appeared to be grimacing as if it was hurting her." Trial Tr. at 30:25-31:4. Furthermore, "[s]he was talking quickly" in an "elevated" or "louder than normal" voice, and in the "tone . . . of a person who was very excited." Id. at 30:25-31:1, 31:7-8. Adding to that her "very animated" demeanor, that she was "waving her arms around," and Warford's assessment that she "was angry," id. at 31:3-6, there was sufficient evidence to support the conclusion that her statement qualified as an excited utterance. The district court therefore did not abuse its discretion when it admitted Jones's statement to Warford as such.

III.

The conviction is affirmed.

_____