# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WALKER, FLEMING, and PARKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist JADE W. JOHNSON**
**United States Army, Appellant**

ARMY 20220117

Headquarters, III Corps and Fort Cavazos
Tiffany D. Pond, Military Judge (arraignment and motions)
Matthew S. Fitzgerald, Military Judge (trial)
Colonel Runo C. Richardson, Staff Judge Advocate

For Appellant: Captain Rachel M. Rose, JA (argued); Colonel Michael C. Friess, JA; Lieutenant Colonel Dale C. McFeatters, JA; Major Joyce C. Liu, JA; Captain Sean P. Flynn, JA (on brief); Lieutenant Colonel Dale C. McFeatters, JA; Major Joyce C. Liu, JA; Major Sean P. Flynn, JA; Captain Rachel M. Rose, JA (on reply).

For Appellee: Captain Stewart A. Miller, JA (argued); Colonel Christopher B. Burgess, JA; Major Andrew M. Hopkins, JA; Captain Joshua A. Hartsell, JA (on brief).

17 April 2024

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Senior Judge:

Appellant raises three assignments of error, two of which warrant discussion but no relief.[1] The first assignment of error asserts the military judge erred in admitting three statements under the excited utterance exception to hearsay. While

---

[1] We have given full and fair consideration to appellant's other assignment of error, to include matters submitted personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they lack merit and warrant neither additional discussion nor relief.

we hold that the military judge abused his discretion in admitting two statements under the excited utterance exception to the rule against hearsay, we find no prejudice. We decline to review the third statement for an abuse of discretion, as defense did not object to its admission at trial, and we find that appellant has failed to meet his burden under plain error review. Appellant asserts in his second assignment of error that the military judge erred in admitting the portion of the victim's video recorded interview in which she identified appellant in a photo line-up. Without deciding error, we conclude appellant failed to establish prejudice for the admission of the video and therefore find he is not entitled to relief.[2]

## ASSIGNMENT OF ERROR I

### BACKGROUND

In April 2021, appellant began communicating with Ms. ██ a civilian he met on the dating application Tinder. A couple of days after appellant and Ms. ██ began exchanging messages over another application, Snapchat, appellant asked Ms. ██ to send him nude photographs, which she declined to do. Over the next week, appellant and Ms. ██ communicated regularly via Snapchat and eventually made plans to meet in person.

On 21 April 2021, Ms. ██ agreed to meet appellant at his house to watch a movie and "cuddle." Although Ms. ██ accepted appellant's invitation, she informed appellant that she was not interested in engaging in sexual intercourse. Appellant informed Ms. ██ that he respected her decision and later picked her up from the "B's"—slang for barracks—where they proceeded to drive to the post-exchange before arriving at appellant's house located in Comanche Village.[3] Appellant failed to disclose to Ms. ██ that he was married and instead told her that he shared the house with a married couple who were currently on leave and not at home.

Upon entering appellant's room, appellant began to play a movie. Appellant removed his shirt and lay on the bed and invited Ms. ██ to do the same. Ms. ██ lay

---

[2] On 11 March 2022, an enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [UCMJ]. Appellant was acquitted of two specifications of sexual assault and one specification of abusive sexual contact. The military judge sentenced appellant to a bad-conduct discharge and confinement for a total of nine months (four months for Specification 2 of The Charge and 5 months for Specification 4 of The Charge to run consecutively).

[3] A housing community located on Fort Cavazos, Texas.

down next to appellant and appellant put his hand around her waist and pulled her closer. A few moments into the movie, appellant turned the victim's face towards him and began kissing her. When Ms. ██ turned away from appellant, he began kissing her more aggressively. At one point, appellant bit Ms. ██ lip, which scared her, prompting her to tell appellant "no." Appellant then put his hand on Ms. ██ throat and got on top of her and she again responded by saying "no." At that point, Ms. ██ "froze" while appellant proceeded to touch Ms. ██ breast over her clothing."[4] Ms. ██ eventually pushed appellant off her, got up from the bed, told appellant she wanted to leave and walked out of the bedroom. Appellant looked "shocked" and followed Ms. ██ as she left appellant's room and headed to his driveway.

As Ms. ██ waited by appellant's car, she realized she forgot her Air Pods. Appellant waited in the car as Ms. ██ went back upstairs to get her Air Pods. Once she returned, Ms. ██ got into the car with appellant so he could drive her back to the barracks. She testified that she did not want to walk back to the barracks where she was staying, because it was cold outside and quite a distance from appellant's home. Ms. ██ explained that she chose not to call her friends for a ride because it was late and they were likely asleep.

During the ride, appellant apologized to Ms. ██ telling her, "I know that you said you didn't want to" and offered to take her to lunch the following day. Ms. ██ did not speak to appellant and looked silently out the window. Once they arrived at the barracks, Ms. ██ slammed the car door and stood outside to "take a breather" for approximately one minute before heading upstairs to see her friend—Corporal (CPL) ██—in his barracks room.[5]

Corporal ██ and his friends were outside on his balcony when Ms. ██ approached them. Ms. ██ "seemed to be off," as if something was wrong, and CPL ██ noticed Ms. ██ was "kind of shaken."[6] Without saying anything, Ms. ██ walked into CPL ██s barracks room. Corporal ██ followed Ms. ██ into his room to find

---

[4] Ms. ██ also testified at trial that appellant digitally penetrated her vulva with his finger without her consent, which served as the basis for Specification 5 of The Charge. Appellant was found not guilty of this offense.

[5] At trial, Ms. ██ testified she was in physical pain and she felt emotionally "[g]ross" and "wanted to jump off a bridge."

[6] At trial it was revealed Ms. ██ had been staying with CPL ██ in his barracks room for a few days prior to 21 April 2021 and CPL ██ and Ms. ██ had engaged in sexual intercourse the night before Ms. ██ left to meet appellant at his house.

out what was wrong. Corporal ███ noticed Ms. ███ was crying which prompted him to ask her what had happened. Ms. ███ crying intensified the more she spoke to CPL ███ and she appeared "shattered" and was "crying uncontrollably."

### A. CPL CC's Testimony

During CPL ███'s direct examination at trial, the government asked CPL ███ what Ms. ███ told him when he inquired as to why she appeared upset. Defense counsel objected on the basis of hearsay. The government responded Ms. ███' statement fell under the excited utterance exception to hearsay. Defense argued Ms. ███ statement did not qualify as an excited utterance because Ms. ███ was no longer "under the startling event at this point in time" and she already testified "about composing herself and having an opportunity to think about what has happened at this point." The government argued there was no time limit requirement for an excited utterance and Ms. ███ was "still under the stress" of the event when she spoke to CPL ███ The military judge overruled the objection without providing any rationale for his ruling. In response to the defense notifying the military judge that they intended to make the same objection to the testimony of another government witness, the military judge stated:

> I think there's significant case law out there that talks about an excited utterance. It does not require an unbroken chain of events to be an excited utterance. And I think that's why I'm asking if there's case law that says otherwise. But there are numerous cases that cite to excited utterance where there's still not – there's no nexus anymore to the event, but they're still under the excitement or stress of that event.
>
> And so there's no requirement to be that – the nexus as it is in a present sense impression. So I'll take that matter up if they haven't laid the foundation for the next witness. But I think that's the present state of case law regarding excited utterance.

After the objection was overruled, CPL ███ testified Ms. ███ told him that she had been sexually assaulted.

### B. Specialist ███'s Testimony

Upon hearing Ms. ███ had been sexually assaulted, CPL ███ testified that he explained various options to her and she could go to the hospital and report it to the military police (MP). After spending approximately thirty-five to forty minutes in

4

CPL ███ s room, Ms. ███ told CPL ███ that she was going to talk to her MP friend—Specialist (SPC) ███

At trial, SPC ███ testified that on 21 April 2021, Ms. ███ called him very upset and crying. Specialist ███ testified the crying made it "hard to understand what she was trying to say," but she became more understandable over the course of the conversation. When the government asked what Ms. ███ told SPC ███, defense counsel objected on the basis of hearsay. Government again argued it was an excited utterance, which prompted defense to request an Article 39(a) session outside the presence of the panel members. The defense counsel then explained the basis of their objection:

> The basis for that being that she's had multiple opportunities at this point to discuss her actions with the individual that she was with, with [CPL ███], prior to calling [SPC ███]. And that's on top of leaving the accused's house, going back up to his room to get her Air Pods, driving over, collecting herself outside, going up to his room, speaking with [CPL ███], and then choosing to leave the room and call somebody else for additional advice. At this point she's asking for advice, she's not continuing to make excited utterances to every individual that she comes across.

Defense counsel explained his arguments were focused on the fact her statement was not spontaneous, excited, or impulsive because Ms. ███' actions, in addition to seeking advice from SPC ███, "tend[ed] to negate the fact that it's simply a spontaneous statement arising out of a startling event." In response, the government focused on the fact that Ms. ███ appeared to still be under the stress of excitement from the event, stating "[s]he was still upset enough that she was not able to fully even convey what it was about the event fully for [SPC ███] to understand what was going on, at least at the beginning of the phone conversation."

The military judge overruled the objection without further analysis on the record. Specialist ███ was then asked again what Ms. ███ said to him, to which he testified that Ms. ███ "insinuated that she may have been sexually assaulted." Specialist ███, as MP, then discussed providing advice to Ms. ███ about calling the MPs and not changing her clothing.

### C. Staff Sergeant ███'s Testimony

The government then called Staff Sergeant (SSG) ███ as a witness, the noncommissioned officer in charge (NCOIC) of Charge of Quarters (CQ) the night of 21 April 2021. Staff Sergeant ███ testified that during his CQ duty Ms. ███

"shared with me that she had been a part of a sexual assault at which point I took the proper steps to ensure that the situation got taken care of." Defense did not object to this testimony. Staff Sergeant ▮ stated that after Ms. ▮ told him she had been sexually assaulted, "she broke down" and was visibly shaking and crying.

### D. Statements to Medical Professionals

After reporting the sexual assault to SSG ▮ Ms. ▮ made additional statements that she was sexually assaulted to a paramedic, as well as a Sexual Assault Medical Forensic Examiner (SAMFE) nurse at the hospital.

Before being transported to the hospital, Ms. ▮ disclosed to a paramedic that Ms. ▮ had made it clear to appellant that she did not want to engage in sexual activity with him but appellant had grabbed her throat, touched her breasts, and penetrated her vagina with his fingers. Ms. ▮ told the paramedic that Ms. ▮ vagina and throat hurt from the sexual assault. Ms. ▮ was then transported to the hospital via ambulance.

At around 0400 hours, Ms. ▮ met with the SAMFE, Ms. ▮, to complete a Sexual Assault Forensic Examination (SAFE). Ms. ▮ informed the sexual assault examiner that someone digitally penetrated her vagina without her consent and she pointed out a scratch on her genital area. Ms. ▮ noted the four-centimeter scratch injury to Ms. ▮ genitalia on the SAFE report.

## LAW AND DISCUSSION

### A. Admissibility

"We review a military judge's ruling admitting or excluding an excited utterance [for] an abuse of discretion." *United States v. Henry*, 81 M.J. 91, 95 (C.A.A.F. 2020) (cleaned up). This court "will only reverse if the military judge's findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law." *Id.* (cleaned up). "Generally, military judges are, of course, granted a wide degree of deference when making discretionary decisions during trial." *United States v. Ramirez*, __ M.J. ___, 2024 CAAF LEXIS 122, at *5 (C.A.A.F. 29 Feb. 2024). However, if the military judge fails to put his findings and full analysis on the record, his decision will be given less deference. *Id.*

Hearsay is an out of court statement that is offered at trial to prove the truth of the matter asserted and is not admissible unless an exception applies. Military Rule of Evidence [Mil. R. Evid.] 801(c); Mil. R. Evid. 802. One such exception is an excited utterance, which is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Mil. R. Evid. 803(2). An excited utterance is considered an exception to

hearsay because the "implicit premise . . . is that a person who reacts to a startling event or condition while under the stress of excitement caused thereby will speak truthfully because of a lack of opportunity to fabricate." *Henry*, 81 M.J. at 96 (cleaned up). "This premise becomes more tenuous where the exciting influence has dissipated and one has had the opportunity to deliberate or fabricate." *United States v. Donaldson*, 58 M.J. 477, 483 (C.A.A.F. 2003).

To be admissible as an excited utterance under Mil. R. Evid. 803(2), the proponent of the statement must satisfy three elements that our superior court established in *United States v. Arnold*: "(1) the statement must be 'spontaneous, excited or impulsive rather than the product of reflection and deliberation'; (2) the event prompting the utterance must be 'startling'; and (3) the declarant must be 'under the stress of excitement caused by the event.'" *Henry*, 81 M.J. at 96 (quoting *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987)) (cleaned up). "The proponent of the excited utterance has the burden to show by a preponderance of the evidence that each element is met." *Henry*, 81 M.J. at 96.

The first and third *Arnold* elements "implicate the timing of the event." *Id.* "The first element implicates the timing of the event, as the closer in time, the less likely the statements are the result of careful consideration (and possible mendacity)." *Id.* at 96-97. When analyzing the third *Arnold* element, our superior court has set forth six factors in *Donaldson* "to help determine whether the declarant was still under the stress of excitement caused by the startling event." *Id.* at 97 (citing *Donaldson*, 58 M.J. at 483) (citation omitted). "Relevant to the third [*Arnold* element] are 'the physical and mental condition of the declarant' and 'the lapse of time between the startling event and the statement.'" *Henry*, 81 M.J. at 96 (quoting *Donaldson*, 58 M.J. at 483) (cleaned up). "However, '[i]t is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance.'" *Henry*, 81 M.J. at 97 (quoting *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010)).

### *1. Ms. █████' Statement to CPL █████*

Appellant argues Ms. ███' statement to CPL ███ was not spontaneous, excited, or impulsive, nor was it made while she was under the stress of the excitement caused by the event. We agree with appellant and find the military judge abused his discretion when he ruled the statement was admissible as an excited utterance.

First, the military judge failed to put his full analysis on the record and did not address the elements required under *Arnold*, nor did he provide analysis for the third element using the *Donaldson* factors, thereby affording him less deference by this court. *United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014). Given the

7

arguments at trial and on appeal, we find the second element is not at issue and only analyze the first and third *Arnold* elements.

In analyzing the first *Arnold* element, we find Ms. ███ statement to CPL ███ was not spontaneous, excited or impulsive and was instead a product of reflection and deliberation based on the following: (1) Ms. ███ paused to do an inventory of her belongings at appellant's house before deciding to go upstairs to retrieve her Air Pods, (2) Ms. ███ contemplated her options to get a ride back to the barracks and ultimately decided to have appellant drive her instead of calling a friend or other individual, (3) Ms. ███ sat silently through a car ride with appellant while he apologized and offered to take her to lunch until she arrived back at the barracks, (4) Ms. ███ testified that she "took a breather" to compose herself for about "one minute" before she headed up to CPL ███ s room; and (5) Ms. ███ was not compelled to blurt out the statement that she was sexually assaulted to CPL ███ and instead only told CPL ███ after he inquired if something was wrong. These facts indicate Ms. ███ statement to CPL ███ was a product of reflection and deliberation as opposed to being spontaneous, excited, or impulsive.

When examining the third *Arnold* element, we look to the *Donaldson* factors to determine whether Ms. ███ was still under the stress of the startling event at the time she made statements to CPL ███ Those factors include: (1) "'the lapse of time between the startling event and the statement, [(2)] whether the statement was made in response to an inquiry, [(3)] the age of the declarant, [(4)] the physical and mental condition of the declarant, [(5)] the characteristics of the event, and [(6)] the subject matter of the statement.'" *Donaldson*, 58 M.J. at 483 (quoting *Reed v. Thalacker*, 198 F.3d 1058, 1061 (8th Cir. 1999)).

In this case, Ms. ███ did not make the statement that she was sexually assaulted to CPL ███ until after she had retrieved her Air Pods from appellant's room, received a car ride from appellant back to the barracks, and taken a minute to collect herself before going to CPL ███ s room. In considering the passage of time, the facts show that the statement did not occur immediately after the event. "As a general proposition, where a statement relating to a startling event does not immediately follow that event, there is a strong presumption against admissibility under M.R.E. 803(2)." *Donaldson*, 58 M.J. at 484 (citing *United States v. Jones*, 30 M.J 127, 129 (C.A.A.F. 1990)). As discussed above regarding the first *Arnold* element, Ms. ███ made the statement only after CPL ███ inquired why she appeared upset.[7] When looking at the age of the declarant, "courts have been more flexible in

---

[7] *But see United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir. 1980) (citation omitted) ("The single question 'what happened' has been held not to destroy the

(continued . . .)

cases in which the declarant is young," particularly when it is a child. *Donaldson*, 58 M.J. at 484. Here, Ms. ██ was not a child, but a person in her early 20s—additionally, there is no indication in the record that Ms. ██ is unfamiliar with the subject matter of the statements she made to CPL ██ concerning sexual assault. *See Reed v. Thalacker*, 198 F.3d at 1062 (stating young children are less likely to fabricate claims of sexual abuse because they are unfamiliar with the subject matter). Although we have CPL ██'s testimony that Ms. ██ was crying uncontrollably in his room, and Ms. ██ had physical pain and felt "gross" emotionally when she was walking up to the barracks, we do not have evidence of what Ms. ██ was thinking or feeling at the time when she was making the statement to CPL ██ in his room after she had taken a minute to "take a breather." We therefore only have evidence indicating Ms. ██ was emotional at the time (i.e. crying), but nothing further showing the statement was a product of being under the stress of excitement *caused by the event*. In considering the above *Donaldson* factors, we find Ms. ██ statement to CPL ██ does not meet the third *Arnold* element.

Although we acknowledge this is a close call, we afford the military judge little deference due to his failure to place his full analysis on the record. We conclude the totality of the circumstances does not support the military judge's ruling that Ms. ██ statement to CPL ██ qualified as excited utterance. As such, we find the military judge abused his discretion based on an erroneous application of the law, in relation to the facts, when he admitted Ms. ██ statement to CPL ██ into evidence as an excited utterance exception to hearsay pursuant to Mil. R. Evid. 803(2).

### 2. Ms. ██' Statement to SPC ██

In addition to the aforementioned facts, Ms. ██' statement to SPC ██ which insinuated to him that she was sexually assaulted, occurred roughly thirty-five to forty-five minutes after her disclosure to CPL ██ This greater passage of time, combined with Ms. ██ testimony that she contacted SPC ██ an MP, for advice, indicates her statement to SPC ██ was a product of reflection and deliberation and not made while still under the stress caused by the event.[8] We also note the military

---

(. . . continued)
excitement necessary to qualify under this [excited utterance] exception to the hearsay rule.")

[8] Specialist ██, as a member of the law enforcement community, advised Ms. ██ about calling the MPs and not changing her clothing.

judge provided no analysis on the record for his ruling, and we again afford him less deference. *Ramirez*, __ M.J. ___, 2024 LEXIS CAAF LEXIS 122, at *5.

Under the totality of the circumstances, we find the first and third *Arnold* elements were not satisfied as to Ms. ██'s statement to SPC ██. As a result, we find the military judge abused his discretion when he admitted Ms. ██' statement to SPC ██ into evidence as an excited utterance exception to hearsay pursuant to Mil. R. Evid. 803(2).

### 3. Ms. ██' Statement to SSG ██

"When an appellant does not raise an objection to the admission of evidence at trial, we must first determine whether the appellant waived or forfeited the objection." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018). A failure to object constitutes forfeiture absent affirmative waiver. Rule for Courts-Martial [R.C.M.] 905(e). Determining whether an accused has waived an issue is reviewed de novo. *United States v. King*, 83 M.J. 115, 120 (C.A.A.F. 2023) (citation omitted). "[F]orfeiture is the failure to make the timely assertion of a right . . . ." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (cleaned up). "Waiver can occur either by operation of law . . . or by the intentional relinquishment or abandonment of a known right." *Jones*, 78 M.J. at 44 (cleaned up).

This court may only review forfeited issues for plain error. *United States v. Hardy*, 77 M.J. 438, 440 (C.A.A.F. 2018). "If the appellant waived the objection, then we may not review it at all." *Jones*, 78 M.J. at 44. "In making waiver determinations, we look to the record to see if the statements signify that there was a 'purposeful decision' at play." *United States v. Gutierrez*, 64 M.J. 374, 377 (C.A.A.F. 2007) (quoting *United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999)).

Here, defense counsel failed to object to the admission of the statement made by Ms. ██ to SSG ██ at trial. There is nothing in the record to indicate this was a purposeful or strategic decision by defense counsel and appears more to be an acquiescence to the military judge's previous two rulings regarding excited utterance.[9] As such, we find appellant forfeited, as opposed to waived, the objection. We therefore review the issue for plain error. *Hardy*, 777 M.J. at 440. "Under the plain error standard of review, an appellant 'bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error

---

[9] We pause to reiterate the importance to defense practitioners of raising an objection to the admission of government testimony or evidence, even if the military judge's decision appears predetermined based on a previous ruling, in order to preserve a more defense favorable standard of review on appeal.

materially prejudiced a substantial right.'" *United States v. King*, 83 M.J. 115, 123 (C.A.A.F. 2023) (quoting *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018)). "As all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

Determining whether a plain or obvious error occurred regarding the admission of Ms. ██s statement to SSG ██s unnecessary because, even if we were to assume arguendo that an error occurred, appellant has failed to establish, as discussed below, that the admission of Ms. █ statements to CPL ██ SPC █, or SSG █ caused material prejudice to appellant's substantial rights.

### B. Prejudice

This court conducts a review for prejudice de novo. *King*, 83 M.J. at 120 (citation omitted). Errors in the admission of hearsay do not implicate an appellant's constitutional right to confrontation if the declarant of the hearsay was subject to cross-examination at trial, such as in this case. *See United States v. Pablo*, 53 M.J. 356, 359 (C.A.A.F. 2000). "For nonconstitutional evidentiary errors, the test for prejudice 'is whether the error had a substantial influence on the findings.'" *United States v. Kohlbek*, 78 M.J. 326, 334 (C.A.A.F. 2019) (quoting *United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017)) (citation omitted). "In conducting the prejudice analysis, this Court weighs: '(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question.'" *Kohlbek*, 78 M.J. at 334 (quoting *United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015)) (citations omitted). In applying these above factors, we find the admission of Ms. ██ statements to CPL ██, SPC ██, and SSG ██ did not have a substantial influence on the findings in this case.

We find the government's case was strong. Text messages admitted into evidence between Ms. ██ and appellant corroborate Ms. ██' testimony and establish that she made it clear she did not want to engage in any activity beyond "cuddling" because she was "tired of being used for sex." In these exchanges of text messages, appellant confirmed he understood where Ms. ██ stood and told her he would "respect it." Ms. ██ also testified appellant apologized during the ride back to the barracks. The government also presented admissible evidence of Ms. ██ emotional demeanor soon after she returned to the barracks through the testimony of CPL ██ SPC ██, and SSG ██. Ms. ██ reported the sexual assault to law enforcement within hours of leaving appellant's house.

After reporting the sexual assault, Ms. ██ made several detailed statements to a paramedic who transported her to the hospital, which further corroborated Ms. ██ account of the assault. These detailed statements to the paramedic far exceeded Ms.

█ barebone statements to CPL █ SPC █ and SSG █ that she had been sexually assaulted. The paramedic testified, without objection from defense, that Ms. █ said "she had made it clear to [appellant] that she did not want to be intimate, did not want to have sex" and that when they were watching a movie together appellant "started to get closer and cuddle and then eventually grabbing her, the upper part of her throat, starting to kiss her, rub her stomach, fondle her breasts, and then put his hands in her pants with his fingers in her vagina." Additionally, Ms. █ informed the SAMFE at the hospital that Ms. █ had been scratched when someone penetrated her vagina with their fingers without her consent and she was "too tired" to continue with the examination, all of which were memorialized in the SAFE Report.[10] At trial, defense did not object to the SAMFE's testimony regarding Ms. █' statements about the sexual assault, nor did they object to the SAFE Report being entered into evidence as Prosecution Exhibit 46.

In comparison to the government's case, the defense case was weak. Appellant did not assert that sexual activity did not occur but instead alleged he thought Ms. █ consented. Appellant relied on a mistake of fact defense, which was undercut by the text message evidence which showed he understood Ms. █ did not want to engage in sexual activity with him and he would "respect it." This evidence, combined with Ms. █ testimony that appellant was apologetic to her in the car, made the government's case considerably stronger than the defense.

Finally in consideration of the last two factors, we find the statements Ms. █ made to CPL █ SPC █, and SSG █ that she was sexually assaulted were not material to the government's case. The fact she told these individuals she was sexually assaulted offered little weight to the strength of the government's evidence, especially given that her statements to the paramedic and SAMFE nurse were admitted into evidence without objection and contained considerably more detail than her statements to CPL █, SPC █, and SSG █. Ms. █ consistently asserted she was sexually assaulted.

We find the two erroneously admitted statements to CPL █ and SPC █ combined with the statement to SSG █ did not have a substantial influence on the findings, even when considering the cumulative effect of the errors on appellant's trial. *See United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011) (citation omitted) (reversal is only warranted if the court "finds the cumulative errors denied Appellant a fair trial"). We find no prejudice occurred.

---

[10] The SAFE Report also included a diagram of the four-centimeter scratch injury and Ms. █ statement that "his fingers were in my vagina."

## ASSIGNMENT OF ERROR II

### BACKGROUND

On 11 May 2021, Ms. ██ participated in a recorded CID interview. As part of that interview, Ms. ██ agreed to participate in a photo lineup in order to identify the individual who assaulted her. After identifying appellant from the array of photos, investigators left the room. Ms. ██ then had an emotional reaction where she appeared upset, removed her mask, and then placed her head in her hands.

At trial, the government sought to introduce only the identification portion of the CID video, pursuant to Mil. R. Evid. 321, in order to show the "lineup that's conducted" and "Ms. [██] . . . immediate response after seeing the photograph." The government further argued that "what's pretty well established throughout all the case law is a witness's demeanor in response to a significant event is pertinent, relevant evidence, depending on what the event was and why that's relevant." The trial counsel continued:

> In this case the reason that it's pertinent, that immediate reaction after seeing those [in] the lineup is Ms. [██] has a clear, visceral reaction when she now sees [appellant], whom she only had this relatively brief encounter with on one single incident. She sees his photograph, as soon as the agents leave the room she had this visceral reaction as a result.

In response, the defense counsel argued the shortened clip of the CID video failed the Mil. R. Evid. 403 balancing test, specifically stating:

> So the relevance of viewing a lineup is relatively minimal, given the fact the accused was already identified, and also given the fact that her demeanor is really the sole purpose that the government wants to enter this evidence. It's not for the lineup, which is the true exception for this video . . . . The reason the government is offering this video is to bolster their own witness by presenting extra evidence that she was emotionally impacted in some way.

After hearing arguments from both parties, the military judge ruled that the excerpt of the CID interview showing the lineup and Ms. ██ emotional reaction after the lineup would be allowed to come into evidence. In response, defense counsel requested the admission of the entire CID video under Mil. R. Evid. 106 for completeness and to provide context to Ms. ██ emotional reaction. The military

judge denied this request, stating Mil. R. Evid. 106 would not apply to a recording admitted pursuant to Mil. R. Evid. 321.

At a later Article 39(a), the parties once again litigated the excerpt of Ms. ███'s CID interview. Defense counsel argued the video could not be admitted under Mil. R. Evid. 321, because it "contemplates that any evidence of an identification will be produced through witness testimony and not through a video." The government argued that there was nothing in the rule that would preclude the eyewitness identification evidence to come in as a video as opposed to testimony. The military judge ruled the excerpt was admissible, briefly stating the probative value was not substantially outweighed by the danger of unfair prejudice without providing further analysis.

On appeal, the parties maintain their same positions regarding whether only testimonial evidence is allowed to be admitted for corroboration of eyewitness testimony evidence pursuant to Mil. R. Evid. 321.

## LAW AND DISCUSSION

"A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion." *United States v. Jasper*, 72 M.J. 276, 279 (C.A.A.F. 2013) (citing *United States v. McElhaney*, 54 M.J. 120, 132 (C.A.A.F. 2000)). "This Court reviews 'the prejudicial effect of an erroneous evidentiary ruling de novo.'" *Kohlbek*, 78 M.J. at 334 (cleaned up).

We find we can address this nonconstitutional evidentiary issue by resolving whether appellant was prejudiced because of the admission of this video clip. Without deciding that the military judge erred in admitting the excerpt of the CID interview, we find appellant was not prejudiced. As previously discussed, the government's case was strong, while the defense's case was weak. When examining all the evidence in this case, and its' relative materiality, we find the admission of this video clip did not have a substantial influence on the findings in appellant's case. We therefore find no prejudice and offer appellant no relief.

Lastly, we find reversal of the findings is not merited under the cumulative-error doctrine in this case when considering the relatively low probative value of the video clip, along with Ms. ███' hearsay statements to CPL ███, SPC ███, or SSG ███, in relation to all the evidence presented in the case and any alleged cumulative effect of the above errors did not deny appellant a fair trial. *See United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011).

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge FLEMING and Judge PARKER concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court