## UNITED STATES v. GREENBAUM.

### No. 8350.

Circuit Court of Appeals, Third Circuit.

Argued July 9, 1943.

Decided Oct. 25, 1943.

Frederic M. P. Pearse, of Newark, N. J., for appellant.

Vincent E. Hull, Asst. U. S. Atty., of Trenton, N. J. (Charles M. Phillips, U. S. Atty., of Trenton, N. J., on the brief), for appellee.

Before BIGGS, JONES, and DOBIE, Circuit Judges.

BIGGS, Circuit Judge.

An information was filed against the appellant, Samuel Greenbaum, president of the Bakery Mart of Newark, Inc., and against that company, charging him and it, in two counts, with unlawfully introducing and delivering for introduction in interstate commerce cans of adulterated (i. e., rotten) eggs. The pertinent statutory pro-

visions are set out below.[1] At the close of the case a motion was made on behalf of both defendants to dismiss the information and for a directed verdict on the grounds that the information did not charge a crime and that the proofs offered were insufficient to sustain a conviction. The motion was denied. The appellant and the company were found guilty on both counts. Greenbaum was sentenced to pay a fine of $300 and to three months imprisonment. He has appealed.

The information did not charge that he knew that the eggs were rotten when he shipped them into interstate commerce. No proof was offered of guilty knowledge on his part. He contends that for these reasons the judgment should be reversed.

■ Whether allegation and proof of mens rea is requisite to a conviction for a crime which carries with it a possible sentence to penal servitude depends upon the legislative intent evidenced by the statute which defines and punishes the particular offense. United States v. Balint, 258 U.S. 250, 252, 42 S.Ct. 301, 66 L.Ed. 604. The constitutional requirement of due process is not violated merely because mens rea is not a required element of a prescribed crime. Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 69, 70, 30 S.Ct. 663, 54 L.Ed. 930; United States v. Balint, supra, 258 U.S. at page 252, 42 S.Ct. at page 302, 66 L.Ed. 604.

■ While the absence of any requirement of mens rea is usually met with in statutes punishing minor or police offenses (for which fines, at least in the first instance, are ordinarily the penalties), we think that interpretation of legislative intent as dispensing with the knowledge and wilfulness as elements of specified crimes is not to be restricted to offenses differentiable upon their relative lack of turpitude. Where the offenses prohibited and made punishable are capable of inflicting widespread injury, and where the requirement of proof of the offender's guilty knowledge and wrongful intent would render enforcement of the prohibition difficult if not impossible (i. e., in effect tend to nullify the statute), the legislative intent to dispense with mens rea as an element of the offense has justifiable basis. Notable among such offenses are dealings in adulterated foods and drugs. Cf. United States v. Balint, supra, 258 U.S. pages 252, 253, 42 S.Ct. page 302, 66 L.Ed. 604; see also Public Welfare Offenses, Sayre, 33 Columbia Law Rev., 55, 70, et seq., and Ignorance and Mistake in Crimi-

---

[1] See the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. as follows:

Section 331,
"The following acts and the causing thereof are hereby prohibited:
"(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."

Section 342,
"A food shall be deemed to be adulterated—
"(a) * * * (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food;"

Section 321,
"(f) The term 'food' means (1) articles used for food or drink for man or other animals."

Section 333,
"(a) Any person who violates any of the provisions of section 331 shall be guilty of a misdemeanor and shall on conviction thereof be subject to imprisonment for not more than one year, or a fine of not more than $1,000, or both such imprisonment and fine; but if the violation is committed after a conviction of such person under this section has become final such person shall be subject to imprisonment for not more than three years, or a fine of not more than $10,000, or both such imprisonment and fine, * * *
"(b) Notwithstanding the provisions of subsection (a) of this section, in case of a violation of any of the provisions of section 331, with intent to defraud or mislead, the penalty shall be imprisonment for not more than three years, or a fine of not more than $10,000, or both such imprisonment and fine. * * *
"(c) No person shall be subject to the penalties of subsection (a) of this section, * * * (2) for having violated section 331 (a) or (d), if he establishes a guaranty or undertaking signed by, and containing the name and address of, the person residing in the United States from whom he received in good faith the article, to the effect, in case of an alleged violation of section 331(a), that such article is not adulterated or misbranded, within the meaning of this chapter, designating this chapter * * *."

Section 335,
"Before any violation of this chapter is reported by the Administrator to any United States attorney for institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an

nal Law, Perkins, 88 Univ. of Pa., 35, 38, et seq.

■ The statute under which the appellant was indicted, convicted and sentenced, makes no specific requirement of allegation or proof of the offender's knowledge and wilfulness. While the failure so to provide does not necessarily determine that guilt of the offense may be established without such allegation and proof,[2] we conclude that the requirement of § 335, that, before criminal prosecution for a violation of the statute may be instituted, the person against whom such proceeding is contemplated shall be given an opportunity by the Administrator to present his views with regard to such contemplated proceeding[3], negatives any idea that proof of guilty knowledge and wrongful intent at trial of an offense under § 333(a) is necessarily implicit. The prescribed inquiry, a preliminary requisite to prosecution, is designed to search out the possible innocent mind of the particular offender by establishing before trial, his good faith or the extent of his actual knowledge and wilfulness.

We cannot agree with the contention of the government that the fact that an offense under § 333(b), which deals with the introduction of a prohibited article in interstate commerce "with intent to defraud or mislead", is more severely punished than the first offense under § 333(a) furnishes an implication that under § 333(a), proof of the alleged offender's knowledge and wilfulness is not intended. If "intent to defraud or mislead" embraced all instances where there was knowledge or wilfulness, then the argument, based on the inclusion of the requirement in the one instance and its exclusion in the other, would be both pertinent and cogent. But, conceivably, there can be instances where the introduction of a prohibited article in interstate commerce is with knowledge and wilfulness and yet without intent to deceive or mislead, e. g., where the consignee of the shipment knows what he is getting and gets what he wants. Hence, the alleged distinction seems possibly to contain the reverse implication.

■ Also, it must be conceded that the case of Baender v. Barnett, supra, upon which the appellant principally relies, is difficult to reconcile with a statutory construction which dispenses with the need of the offender's knowledge and wilfulness. The statute involved in the Baender case made penal the possession, without lawful authority, of any die in the likeness or similitude of a die designated for making genuine coin of the United States. There is no requirement in that statute that the condemned possession shall be with the possessor's knowledge and wilfulness. But the Supreme Court said that "The statute is not intended to include and make criminal a possession which is not conscious and willing." The basis for the construction thus placed upon the statute in the Baender case is not easy to differentiate. Counterfeiting is a direct and serious affront to the sovereign and usually perpetrated with effort at greatest secrecy, but the particular statutory provision[4] had originally contained the qualifying words "with intent to fraudulently or unlawfully use the same", which were eliminated when the subject matter of the original statute was incorporated in the Criminal Code,—a circumstance that might well have been taken to confirm that the deletion was designedly purposeful. None the less, on the authority of United States v. Balint, supra, we conclude that the construction of the statute before us presents no more than a question of legislative intent[5] and we perceive an intent in § 333(a) to punish persons who

opportunity to present his views, either orally or in writing, with regard to such contemplated proceeding."

[2] See Baender v. Barnett, 255 U.S. 224, 41 S.Ct. 271, 65 L.Ed. 597.

[3] See grounds for exculpation specified in § 333(c).

[4] § 169 of the Criminal Code, c. 127, Sec. 1, 26 Stat. 742, 18 U.S.C.A. § 283.

[5] The legislative history of the statute throws some light on the nature of the penalties.

The report to the House of Representatives of Congressman Lea, Chairman of the House Committee on Interstate and Foreign Commerce (Report No. 2139, to accompany S. 5, 75th Cong. 3rd Sess., p. 4), contains the statement, "[Section 333] * * * increases substantially the criminal penalties of the present law [the Food and Drugs Act of June 30, 1906, 34 Stat. 768, as amended, 21 U.S.C.A. §§ 1–15] which some manufacturers have regarded as substantially a license fee for the conduct of an illegitimate business. Appropriate exemptions are provided for dealers who innocently receive and distribute illegal goods." During the debate upon the bill Congressman Lea stated (Cong. Record, Vol. 83, Part 7, 75th Cong., 3rd Sess., 7775), "Then increased penalties are provided. Under the present law, as I re-

440

introduced adülterated foods into interstate commerce regardless of their lack of knowledge or wilfulness.

In construing Section 2 of the Food and Drugs Act of 1906, 21 U.S.C.A. § 2, courts have held that guilty knowledge was not necessary to sustain a conviction. See Strong, Cobb & Co. v. United States, 6 Cir., 1939, 103 F.2d 671, and United States v. Sprague, D.C.E.D.N.Y.1913, 208 F. 419. The analogy is obvious.

The second point raised by the appellant is without merit and does not require discussion.

The judgment will be affirmed.

call, the maximum penalty is $500 and the ordinary penalty is $300. The bill we report fixes a maximum penalty of $10,000 and a maximum time in jail of 3 years instead of 1 year as under the present law.

"The main object of so increasing these penalties is to provide suitable penalties due to the changed conditions since 1906. We have a great many institutions manufacturing drugs and foods that are very strong financially and we thought these higher penalties are justified in view of present conditions and to cover cases of the persistent violator."