MURPHY, Circuit Judge.
Austin “Jack” DeCoster and Peter De-Coster both pled guilty, as “responsible corporate officers” of Quality Egg, LLC, to misdemeanor violations of 21 U.S.C. § 331(a) for introducing eggs that had been adulterated with salmonella enteritid-is into interstate commerce. The district court[1] sentenced Jack and Peter to three months imprisonment. The DeCosters appeal, arguing that their prison sentences and 21 U.S.C. § 333(a)(1) are unconstitutional, and claiming in the alternative that their prison sentences were procedurally and substantively unreasonable. We affirm.
I.
Jack DeCoster owned Quality Egg, LLC, an Iowa egg production company. Jack’s son Peter DeCoster served as the company’s chief operating officer. Quality Egg operated six farm sites with 73 barns which were filled with five million egg laying hens. It also had 24 barns which *630 were filled with young chickens that had not yet begun to lay eggs. Additionally, the company owned several processing plants where eggs were cleaned, packed, and shipped.
Jack also owned and operated several egg production companies in Maine, and Peter worked at those facilities. In 2008, salmonella enteritidis (“salmonella”) tests conducted at the Maine facilities came back positive. The DeCosters succeeded in eliminating salmonella from their Maine facilities by following the recommendations of hired consultants, including poultry disease specialist Dr. Charles Hofacre and rodent control expert Dr. Maxcy Nolan.
Periodically the DeCosters also tested the Iowa hens and facilities for salmonella. Some of these tests came back positive in 2006, and the positive test results increased in frequency through the fall of 2010. Until the USDA adopted its new egg safety rule in July 2010, Quality Egg was not legally obligated to conduct salmonella tests of its eggs after receiving positive environmental test results. Nevertheless, Quality Egg tested its eggs in April 2009 after being notified that a Minnesota restaurant purchaser had had a salmonella outbreak. The sample of its eggs tested negative for salmonella.
Other than conducting the single egg test in April 2009, Quality Egg did not test or divert eggs from the market before July 2010 despite receiving multiple positive environmental and hen test results. In 2009 the DeCosters hired Dr. Hofacre and Dr. Nolan to consult on the company’s Iowa operations. The consultants recommended implementing the same measures in Iowa as had been used in Maine. Although the DeCosters claim they adopted all of the recommendations, the precáutions implemented by Quality Egg failed to eradicate salmonella. The Centers for Disease Control and Prevention estimated that about 56,000 Americans fell ill with salmonellosis in 2010 after consuming contaminated eggs. In August 2010, federal and state officials determined that the salmonella outbreak had originated at Quality Egg’s facilities. In response Quality Egg recalled eggs that had been shipped from five of its six Iowa farm sites between May and August 2010.
The FDA inspected the Quality Egg operations in Iowa from August 12-30, 2010. Investigators discovered live and dead rodents and frogs in the laying areas, feed areas, conveyer belts, and outside the buildings. They also found holes in the walls and baseboards of the feed and laying buildings. The investigators discovered that some rodent traps were broken, and others had dead rodents in them. In one building near the laying hens, manure was found piled to the rafters; it had pushed a screen out of the door which allowed rodents into the building. Investigators also observed employees not wearing or changing protective clothing and not cleaning or sanitizing equipment.
The FDA concluded that Quality Egg had failed to comply with its written plans for biosecurity and salmonella prevention. One government expert reported that “there were minimal to no records from the poultry [ ] barns to indicate that company personnel [had] implemented the written plans [to eliminate salmonella].” The agency also discovered that the company’s eggs tested positive for salmonella at a rate of contamination approximately 39 times higher than the current national rate, and that the contamination had spread throughout all of the Quality Egg facilities. In October 2010 the FDA instructed Quality Egg to euthanize every hen, remove the manure, repair its facilities, and disinfect its barns to prevent the risk of another outbreak.
*631 The government then began a criminal investigation of the company’s food safety practices and ultimately filed a criminal information against Quality Egg and both of the DeCosters. The investigation revealed that Quality Egg previously had falsified records about food safety measures and had lied to auditors for several years about pest control measures and sanitation practices. Although its food safety plan stated that Quality Egg performed flock testing to identify and control salmonella, no flock testing was ever done. Quality Egg employees had also bribed a USDA inspector in 2010 to release eggs for sale which had been retained or “red tagged” for failing to meet minimum quality grade standards. Quality Egg also misled state regulators and retail customers by changing the packing dates of its eggs and selling the misbranded eggs into interstate commerce. The parties additionally stipulated that one Quality Egg employee was prepared to testify at trial that Jack DeCoster had once reprimanded him because he had not moved a pallet of eggs in time to avoid inspection by the USDA. The investigation also revealed that in 2008 Peter DeCoster had made inaccurate statements to Walmart about Quality Egg’s food safety and sanitation practices.
Quality Egg pled guilty to: (1) a felony violation of 18 U.S.C. § 201(b)(1) for bribing a USDA inspector, (2) a felony violation of 21 U.S.C. § 331(a) for introducing misbranded eggs into interstate commerce with intent to defraud and mislead, and (3) a misdemeanor violation of 21 U.S.C. § 331(a) for introducing adulterated eggs into interstate commerce. Jack and Peter each pled guilty to misdemeanor violations of 21 U.S.C. § 331(a) as responsible corporate officers under the Food Drug & Cosmetic Act (FDCA). In their plea agreements, the DeCosters stated that they had not known that the eggs were contaminated at the time of shipment, but stipulated that they were in positions of sufficient authority to detect, prevent, and correct the sale of contaminated eggs had they known about the contamination. The parties also stipulated that the DeCosters’ advisory guideline range was 0 to 6 months imprisonment, and both defendants agreed to be sentenced based on facts the sentencing judge found by a preponderance of the evidence.
Before sentencing, the DeCosters argued that sentences of incarceration would be unconstitutional because they had not known that the eggs were contaminated at the time they were shipped. The district court denied the motions, imposed $100,000 fines on both Jack and Peter DeCoster and sentenced them to three months imprisonment. See 21 U.S.C. § 333(a)(1) (explaining that anyone who violates section 331 “shall be imprisoned for not more than one year or fined not more than $1,000, or both”); 18 U.S.C. § 3571(b)(5) (setting maximum fine of $100,000 for class A misdemeanor not resulting in death). The court determined that although nothing in the record indicated that Peter and Jack had actual knowledge that the eggs they sold were infected with salmonella, the record demonstrated that their safety and sanitation procedures were “egregious,” that they ignored the positive salmonella environmental test results before July 2010 by not testing their eggs, and that they knew that their employees had deceived and bribed USDA inspectors. The district court explained that the record supported the inference that the DeCosters had “created a work environment where employees not only felt comfortable disregarding regulations and bribing USDA officials, but may have even felt pressure to do so.” The district court accordingly concluded that this was not a case involving “a mere unaware corporate executive.”
*632 The DeCosters appeal, arguing that their prison sentences under 21 U.S.C. § 333(a)(1) are unconstitutional under the Due Process Clause and the Eighth Amendment. In the alternative they claim that their sentences were procedurally and substantively unreasonable.
II.
Under the FDCA responsible corporate officer concept, individuals who “by reason of [their] position in the corporation [have the] responsibility and authority” to take necessary measures to prevent or remedy violations of the FDCA and fail to do so, may be held criminally liable as “responsible corporate agents,” regardless of whether they were aware of or intended to cause the violation. United States v. Park, 421 U.S. 658, 673-74, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). The FDCA “punishes neglect where the law requires care, or inaction where it imposes a duty” because according to Congress, the “public interest in the purity of its food is so great as to warrant the imposition of the highest standard of care on distributors.” Id. at 671, 95 S.Ct. 1903 (internal quotation marks omitted). A corporate officer may avoid liability under this doctrine by showing that he was “powerless to prevent or correct the violation.” Id. at 673, 95 S.Ct. 1903 (internal quotation marks omitted).
The DeCosters argue that their prison sentences violate due process and the Eighth Amendment. The government contends that because the DeCosters raise an Eighth Amendment claim, their case is governed exclusively by that amendment. See Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The Supreme Court has explained that “[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.” Id. (internal quotation marks omitted).
The DeCosters raise two separate constitutional claims. They first argue that their sentences are not proportional to their crimes as required by the Eighth Amendment. See Graham v. Florida, 560 U.S. 48, 60, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). They also argue that the penalty of incarceration of any length for this misdemeanor offense would violate substantive due process. See Zadvydas v. Davis, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); see also United States v. Greenbaum, 138 F.2d 437, 438 (3d Cir.1943) (concluding that three month prison sentence for corporate officer’s FDCA misdemeanor violation did not violate due process); United States v. Higgins, 2011 WL 6088576, at *10 (E.D. Pa. Dec. 7, 2011) (same for nine month prison sentence).
We review de novo a substantive due process claim. United States v. Clemmons, 461 F.3d 1057, 1061 (8th Cir.2006). The DeCosters argue that their prison sentences are unconstitutional because they did not personally commit wrongful acts. They analogize this case to others where courts have determined that due process is violated when prison terms are imposed for vicarious liability crimes. See Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1367 (11th Cir.1999); State v. Guminga, 395 N.W.2d 344, 346 (Minn.1986); Davis v. City of Peachtree City, 251 Ga. 219, 304 S.E.2d 701, 703-04 (1983); Commonwealth v. Koczwara, 397 Pa. 575, 155 A.2d 825, 830 (1959). The Eleventh Circuit explained in Lady J. that “due process prohibits the state from imprisoning a person without proof of some form of personal blameworthiness more *633 than a ‘responsible relation.’ ” 176 F.3d at 1367.
Officer liability under the FDCA, however, is not equivalent to vicarious liability. See Park, 421 U.S. at 674-75, 95 S.Ct. 1903. Under vicarious liability, a supervisory party is held liable “for the actionable conduct of a subordinate ... based on the relationship between the two parties.” Liability, Black’s Law Dictionary (10th ed. 2014). Under the FDCA, in contrast, a corporate officer is held accountable not for the acts or omissions of others, but rather for his own failure to prevent or remedy “the conditions which gave rise to the charges against him.” See Park, 421 U.S. at 675, 95 S.Ct. 1903. Thus, “some measure of blameworthiness” is “im-portad]” directly to the corporate officer. Id. at 673, 95 S.Ct. 1903.
Here, as owner of Quality Egg, Jack decided which barns were subject to salmonella environmental testing, and as chief operating officer, Peter coordinated many of the company’s salmonella prevention and rodent control efforts. Neither of the DeCosters claim to have been “powerless” to prevent Quality Egg from violating the FDCA. See id. Despite their familiarity with the conditions in the Iowa facilities, they failed to take sufficient measures to improve them. On this record, the district court reasonably found that “the defendants ‘knew or should have known,’ of the risks posed by the insanitary conditions at Quality Egg in Iowa, ‘knew or should have known’ that additional testing needed to be performed before the suspected shell eggs were distributed to consumers, and ‘knew or should have known’ of [ ] proper remedial and preventative measures to reduce the presence of [salmonella].” The FDCA “punishes neglect where the law requires care.” Id. at 671, 95 S.Ct. 1903 (internal quotation marks omitted). We conclude that the record here shows that the De-Costers are liable for negligently failing to prevent the salmonella outbreak. See id. at 678-79, 95 S.Ct. 1903 (Stewart, J., dissenting) (reading majority opinion in Park as establishing a negligence standard).
The DeCosters argue that their prison sentences also violate the Due Process Clause because they did not know that the eggs the company distributed had salmonella. We have explained that “the imposition of severe penalties, especially a felony conviction, for the commission of a morally innocent act may violate” due process. See United States v. Enochs, 857 F.2d 491, 494 n.2 (8th Cir.1988). The elimination of a mens rea requirement does not violate the Due Process Clause for a public welfare offense where the penalty is “relatively small,” the conviction does not gravely damage the defendant’s reputation, and congressional intent supports the imposition of the penalty. See Staples v. United States, 511 U.S. 600, 617, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (citing Morissette v. United States, 342 U.S. 246, 256, 72 S.Ct. 240, 96 L.Ed. 288 (1952)); Holdridge v. United States, 282 F.2d 302, 309-10 (8th Cir.1960).
The three month prison sentences the DeCosters received were relatively short. See Staples, 511 U.S. at 617, 114 S.Ct. 1793. We have previously determined that even a maximum statutory penalty of one year imprisonment for a misdemeanor offense is “relatively small” and does not violate due process. See United States v. Flum, 518 F.2d 39, 43-45 (8th Cir.1975) (en banc), cert. denied, 423 U.S. 1018, 96 S.Ct. 454, 46 L.Ed.2d 390 (1975); 21 U.S.C. § 333(a)(1); cf. United States v. Wulff, 758 F.2d 1121, 1125 (6th Cir.1985) (concluding that a felony conviction which carried a penalty of a maximum of two years imprisonment was not relatively small).
The DeCosters’ misdemeanor convictions also do not gravely damage their *634 reputations. In Flum, we explained that a misdemeanor conviction under a federal law which provided for a maximum imprisonment of one year did not gravely “besmirch” the defendant’s reputation because it did not brand him as a “felon or subject him to any burden beyond the sentence imposed.” See 518 F.2d at 43; cf. Wulff, 758 F.2d at 1125 (felony conviction would irreparably' damage a defendant’s reputation because a felon loses his civil rights). Similarly 'in this case, the DeCosters will not be branded as felons, and the record does not identify any additional civil sanctions they may be subject to beyond their sentences. Finally, the elimination of criminal intent under 21 U.S.C. § 333(a) did not violate due process because, as the Supreme Court has explained, “Congress has seen fit to enforce the accountability of responsible corporate agents dealing with products which may affect the health of consumers by penal sanctions cast in rigorous terms.” Park, 421 U.S. at 673, 95 S.Ct. 1903.
The dissent argues that we must treat the FDCA, 21 U.S.C.. §§ 331(a), 333(a)(1), as requiring a defendant to know he violated the statute in order to be subject to its penalties because the statute has “no express congressional statement” to omit a mens rea requirement. We rely however “on the nature of the statute and the particular character of the items regulated to determine whether congressional silence concerning the mental element of the offense should be interpreted as dispensing with conventional mens rea requirements.” Staples, 511 U.S. at 607, 114 S.Ct. 1793. The FDCA regulates services and products which affect the health and well being of the public. For this reason, Congress has not required “awareness of some wrongdoing” in order to hold responsible corporate agents accountable for violating the statute. Park, 421 U.S. at 672-73, 95 S.Ct. 1903 (internal quotation marks omitted). Although the “requirements of foresight and vigilance imposed on responsible corporate agents [in 21 U.S.C. § 331(a) ] are beyond question demanding, and perhaps onerous, [ ] they are. no more stringent” than required to protect the unknowing public from consuming hazardous food, such as salmonella infected eggs. Id. at 672, 95 S.Ct. 1903. The language in the FDCA and Supreme Court precedent interpreting the statute support the conclusion that defendants are not required to have known that they violated the FDCA to be subject to the statutory penalties.
As the Third Circuit explained in United States v. Greenbaum, “[t]he constitutional requirement of due process is not violated merely because mens rea is not a required element of a prescribed crime.” 138 F.2d 437, 438 (3d Cir.1943). In Greenbaum, the court affirmed a corporate president’s three month prison sentence for introducing adulterated eggs into interstate commerce in violation of the same statute at issue in this case. Id. at 439. The Greenbaum court explained that “the legislative intent to dispense with mens rea as an element of [a misdemeanor FDCA] offense has a justifiable basis” because such offenses “are capable of inflicting widespread injury, and [] the requirement of proof of the offender’s guilty knowledge and wrongful intent would render enforcement of the prohibition difficult if not impossible.” Id. at 438. For the same reasons, we conclude that the DeCosters’ sentences do not violate the Due Process Clause even though mens rea was not an element of their misdemeanor offenses.
The DeCosters also claim that their sentences violate the Eighth Amendment. We review this issue de novo. United States v. Martin, 677 F.3d 818, 821 (8th Cir.2012). The Eighth Amendment bars prison sentences that are “grossly dispro *635 portionate for a particular defendant’s crime.” Graham v. Florida, 560 U.S. 48, 60, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)..To determine whether a specific sentence is grossly disproportionate we weigh “the harshness of the penalty” against “the gravity of the offense,” and we also consider the “harm caused or threatened to the victim or to society, and the culpability and degree of the defendant’s involvement.” United States v. Lee, 625 F.3d 1030, 1037 (8th Cir.2010) (internal quotation marks omitted).
On this record, the DeCosters’ three month prison sentences are not grossly disproportionate to the gravity of their misdemeanor offenses. When defining the statutory penalties in the FDCA, Congress recognized the importance of placing the burden on corporate officers to protect consumers “who are wholly helpless” from purchasing adulterated food products which could make them ill. See United States v. Dotterweich, 320 U.S. 277, 285, 64 S.Ct. 134, 88 L.Ed. 48 (1943). “[T]he public has a right to expect” a heightened degree of foresight and care from “those who voluntarily assume positions of authority in business enterprises whose services and products affect the health and well-being of the public that supports them.” Park, 421 U.S. at 672, 95 S.Ct. 1903. The 2010 salmonella outbreak may have affected up to 56,000 victims, some of whom were hospitalized or suffered long term injuries. For one example, a child hospitalized in an intensive care unit for eight days was saved by antibiotics which damaged his teeth, causing them to be capped in stainless steel.
We conclude this is not “the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.” United States v. Spires, 628 F.3d 1049, 1054 (8th Cir.2011) (internal quotation marks omitted). Moreover, the DeCosters’ three month prison sentences fell at the low end of the prescribed statutory range of 21 U.S.C. § 333(a) (one year maximum), and we have “never held a sentence within the statutory range to violate the Eighth Amendment,” United States v. Vanhorn, 740 F.3d 1166, 1170 (8th Cir.2014). We decline to do so here as well. We conclude that the district court’s sentences in this case do not- violate the Eighth . Amendment.
III.
Finally, the DeCosters argue that their sentences are procedurally and substantively unreasonable. “When analyzing a sentence for procedural error, we review a district court’s interpretation and application of the guidelines de novo and its factual findings ... for clear error.” United States v. Callaway, 762 F.3d 754, 759 (8th Cir.2014). We review the substantive reasonableness of a sentence for abuse of discretion. Id. at 760.
The DeCosters claim that their sentences are procedurally unreasonable because the court relied on clearly erroneous facts. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir.2009). First, the DeCosters argue that the court erred by stating that they had. “ignore[d]” the positive environmental salmonella tests before 2010. During sentencing a district court may rely on facts it finds by a preponderance of the record evidence. See United States v. Nassif, 921 F.2d 168, 170 (8th Cir.1990). Here, the court found that while the DeCosters cleaned their barns and administered a second salmonella vaccine to their chickens in 2010, they did not test or divert eggs until July 2010 even though they had reason to suspect their contamination. The court did not clearly err by determining that the actions or inactions of the DeCosters was insufficient and blame *636 worthy under these circumstances. See Park, 421 U.S. at 672, 95 S.Ct. 1903 (explaining that corporate officers may be held liable for failing to “devise whatever measures are necessary to ensure compliance with the [FDCA]”)..
The DeCosters also argue that the district court erred by finding that they “failed to follow” the methods they had previously used to eliminate salmonella in their Maine facilities. They concede however that they previously stipulated that no expert had a basis to testify about whether Quality Egg “fully” and “effectively” implemented all of the specialist recommendations in Iowa. They also agree with the probation office determination that they had not effectively implemented the methods used at their.Maine facilities. The district court did not clearly err in interpreting the evidence to show that the DeCosters had failed to follow all of the expert recommendations.
The DeCosters also argue that their sentences are substantively unreasonable because the district court gave substantial weight to prior offenses and regulatory violations committed by Quality Egg employees even though the DeCosters had not sanctioned those actions and the violations were unrelated to the salmonella outbreak. The sentences here are presumptively reasonable because they are within the stipulated guideline range of 0 to 6 months imprisonment for each defendant. See Callaway, 762 F.3d at 760. Furthermore, the district court did not abuse its discretion by considering the Quality Egg employees’ pattern of deceiving the FDA. A sentencing court may consider “ ‘any information concerning the background, character, and conduct of [a] defendant.’ ” See United States v. Rogers, 423 F.3d 823, 828 (8th Cir.2005) (quoting USSG § 1B1.4). Here, the court considered such background information and found that the DeCosters had “created a work environment where employees not only felt comfortable disregarding regulations and bribing USDA officials, but may have felt pressure to do so.” In fact, one employee alleged that Jack DeCoster had once reprimanded him because he had not moved a pallet of eggs in time to avoid inspection by the USDA. Peter DeCoster was similarly personally implicated in the company’s violations because of inaccurate statements he made to Walmart about Quality Egg’s food safety and sanitation practices.
We conclude that the district court properly considered relevant past conduct and imposed substantively reasonable sentences on the DeCosters.
TV.
For these reasons the judgments of the district court are affirmed.

. The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.