# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00268-CR

---

### Ex parte Abraham Reyes-Martinez

---

### FROM THE 22ND DISTRICT COURT OF HAYS COUNTY
### NO. CR-21-0871-A-HC, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

---

## O P I N I O N

Appellant Abraham Reyes-Martinez appeals the trial court's order denying his pretrial application for writ of habeas corpus. *See* Tex. Code Crim. Proc. arts. 11.08, .24. Appellant was arrested and charged with aggravated assault with a deadly weapon and felony murder. *See* Tex. Penal Code §§ 19.02(b)(3), 22.02(a)(2). Bail was set at $50,000 and $300,000, respectively. In three issues, appellant contends that his bail amounts are excessive and that the felony-murder statute is unconstitutional as-applied and on its face. *See id.* § 19.02(b)(3). We will affirm the trial court's order.

## BACKGROUND[1]

The evidence presented at the writ hearing consisted of testimony from appellant's mother as well as the following exhibits: two probable cause affidavits, appellant's indictment, indictments in two related cases, and a series of partial and complete offense reports.

---

[1] We view the record in the light most favorable to the trial court's ruling. *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021).

At approximately 10 p.m. on November 2, 2020, patrol deputies with the Hays County Sheriff's Office (HCSO) responded to a shooting at a Poco Loco gas station in Kyle, Texas. Officers reviewed CCTV footage of the incident from cameras in the parking lot. The footage showed that appellant and his two friends—Josue Nolasco-Campuzano and D.S., a minor—were selling marijuana from appellant's vehicle when an individual, later identified as Robert Ochoa, got into the back seat to make a purchase. After several minutes, Ochoa emerged, fighting with one of appellant's friends. Appellant exited the vehicle and began striking Ochoa from behind with a metallic object. Ochoa fell to the ground and was placed in a choke hold by one of appellant's friends. Appellant stood over Ochoa and pointed the metallic object at him.

At that moment, a car drove up, and appellant and D.S. reentered appellant's vehicle, with appellant in the driver's seat and D.S. seated behind him in the back seat; Nolasco-Campuzano fled on foot. As appellant drove away, Ochoa fired a handgun at appellant's vehicle, fatally wounding D.S. and striking appellant in his left hip. Appellant dropped D.S. off at the hospital and returned home. In a subsequent interview, appellant told officers that D.S. had taken a "black Glock 22" handgun to the sale.

At appellant's residence, officers observed a black Nissan Altima parked in the driveway with what appeared to be spent .45-caliber shell casings inside and six bullet holes on its exterior. A silver SE Ford was also parked at the home, and an officer saw "fresh blood drippings" on the car and leading into the house. The Ford contained a safe, and both vehicles had drug paraphernalia in plain view.

On November 4, 2020, D.S.'s mother informed officers that appellant and Nolasco-Campuzano had come to her home and told her that Ochoa, whom they also knew as "Beijing," shot her son. Nolasco-Campuzano confirmed to the officers that he had spoken with

2

D.S.'s mother but explained that while he had been given a photograph of Ochoa, he did not know him personally. Nolasco-Campuzano showed officers the text exchange in which he received Ochoa's booking photo as well as the message, "His name is Beijing bat." D.S.'s mother later clarified that appellant and Nolasco-Campuzano had provided a description of the shooter, and a member of her family had noted that the description was consistent with Ochoa.

Ochoa was subsequently arrested and interviewed. He claimed that while in appellant's vehicle, he decided not to purchase the marijuana and, when he tried to leave, was grabbed by one individual and "pistol-whipped" in the head by another. An officer observed staples in Ochoa's head, which Ochoa stated he received at a hospital on the night of the shooting. The officer noted that this "appeared consistent with CCTV footage." Ochoa admitted to grabbing a handgun during the incident and firing it through the door of the vehicle.

Appellant was arrested and charged with aggravated assault with a deadly weapon and felony murder. His bail amounts were set at $50,000 and $300,000, respectively. Appellant filed a pretrial application for writ of habeas corpus, challenging the bail amounts and the constitutionality of the felony-murder statute, Subsection 19.02(b)(3) of the Texas Penal Code. The trial court held a hearing at which appellant's mother, Blanca Reyes, testified.

Reyes, through an interpreter, testified that appellant just turned 19 and lived at home with her and his three siblings. Appellant has lived his entire life in Hays County, and his criminal history consists only of two marijuana possession cases pending in Hays County. He works in construction with his father, and Reyes works for the City of Austin. Appellant has no vehicles that he could sell to raise money, and no bonds, trusts, or other "source of money that he could . . . convert [to] make the bond."

3

Reyes explained that she had made efforts to employ a bail bond company, but they asked for "properties in value of [$]300,000," which the family does not have. Other than the house in which the family lives, appellant's father owns property in Waco worth less than $100,000. The family had also managed to raise $10,000 from family members. Reyes testified that the bond company indicated that if the bond were reduced to "the vicinity of $100,000," it would be willing to accept the property in Waco as collateral. Consequently, she testified that she would be able to make a bond in an amount of $100,000.

At the conclusion of the hearing, the trial court denied appellant's amended writ application. This appeal follows.

## DISCUSSION

In three issues, appellant contends that (1) the trial court abused its discretion by refusing to reduce his bail amounts; (2) the felony-murder rule is unconstitutional as applied because "it holds that a victim, Appellant, can be held responsible for the independent violent criminal acts of another who is not a co-conspirator," in violation of the Due Process Clause; and (3) the felony-murder rule is unconstitutional on its face because it allows for a conviction in the absence of an applicable mental state, creates a mandatory presumption of guilt, and punishes a defendant as a murderer in the absence of a mental state, violating the Due Process and Cruel and Unusual Punishment Clauses.

4

## I.     Bail

In his first issue, appellant contends that the trial court abused its discretion by denying his request for reduced bail.[2]  Appellant asserts that his bail amounts are excessive under the factors listed in article 17.15 of the Texas Code of Criminal Procedure and *Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981).  *See* Tex. Code Crim. Proc. art. 17.15.

"'Bail' is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond."  *Id.* art. 17.01.  With certain exceptions not applicable here, the Texas Constitution guarantees that "[a]ll prisoners shall be bailable by sufficient sureties."  Tex. Const. art. I, § 11; *see* Tex. Code Crim. Proc. art. 1.07.  Both the federal and state constitutions prohibit "excessive" bail.  U.S. Const. amend. VIII; Tex. Const. art. I, § 13; *see* Tex. Code Crim. Proc. art. 1.09.  Bail is considered excessive if it is "set in an amount greater than is reasonably necessary to satisfy the government's legitimate interests."  *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd).

The Code of Criminal Procedure commits the setting of bail to the discretion of the trial court or magistrate but sets forth five rules that, together with the Constitution, govern the exercise of that discretion.  Tex. Code Crim. Proc. art. 17.15; *see Beard*, 92 S.W.3d at 568.  Bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with but not so high as to make it an instrument of oppression.  Tex. Code Crim. Proc. art. 17.15(1), (2); *see Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977) (stating that primary purpose of pretrial bail is to secure presence of defendant).  The following factors

---

[2]  Chapter 17 of the Code of Criminal Procedure uses "bail" and "bond" interchangeably.  *Id.* at 577.

are to be considered when setting bail: (1) the nature of the offense and the circumstances under which it was committed, (2) the ability to make bail, and (3) the future safety of victims of the alleged offense and the community. *See Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021) (quoting Tex. Code Crim. Proc. art. 17.15). The "nature and circumstances" of the case "implicate the range of punishment." *Id.* "Other relevant factors include the defendant's employment history, family ties, length of residency, criminal history, previous bond compliance, and other outstanding bonds, and the aggravating facts of the charged offense." *Id.* (citing *Rubac*, 611 S.W.2d at 849–50). The burden is on the defendant to prove that bail is excessive in light of the above factors. *Rubac*, 611 S.W.2d at 849; *Ex parte Benefield*, 403 S.W.3d 240, 242 (Tex. Crim. App. 2013) ("On appeal or in a habeas proceeding, the defendant has the burden to prove that bail is excessive.").

We review the trial court's ruling on a request for a bail reduction for an abuse of discretion. *Rubac*, 611 S.W.2d at 850; *Beard*, 92 S.W.3d at 568; *see Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013) (stating that "the decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail 'will not be disturbed by this Court in the absence of an abuse of discretion'" (quoting *Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex. Crim. App. 1981))). Thus, we will not disturb the trial court's ruling if it was within the zone of reasonable disagreement. *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.); *Beard*, 92 S.W.3d at 573; *see Ex parte Brooks*, 376 S.W.3d 222, 225 (Tex. App.—Fort Worth 2012, pet. ref'd) ("To determine whether the trial court abused its discretion [in ruling on a request to reduce bail], we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable."). In addition, we view the record and evidence in the light most favorable to the trial court's ruling.

*See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).  The trial court is the exclusive judge of witness credibility, and we afford it "considerable discretion in making those challenging determinations."  *Ex parte Everage*, No. 03-17-00879-CR, 2018 WL 1788795, at *9 (Tex. App.—Austin Apr. 13, 2018, no pet.) (mem. op., not designated for publication) (observing that bail cases involve "the difficult task of weighing the specific facts of a case against many, often contravening factors, and often in the face of scant evidence"); *see Esquivel v. State*, 922 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.) (stating "[t]he trial court, as the trier of fact, has the job of judging the credibility of the witnesses and the weight to be given their testimony" at bond hearing); *Ex parte Duque*, 540 S.W.3d 136, 145 (Tex. App.— Houston [1st Dist.] 2017, pet. struck) ("In habeas proceedings, '[v]irtually every fact finding involves a credibility determination,' and 'the fact finder is the exclusive judge of the credibility of the witnesses.'" (quoting *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996))).

### A.    *Nature of the offense*

The "primary factors" to consider when evaluating the reasonableness of bail are the nature of the offense and the punishments that can be imposed for committing it.  *See Rubac*, 611 S.W.2d at 849; *Ex parte Dupuy*, 498 S.W.3d 220, 230 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Here, the offenses charged are aggravated assault with a deadly weapon, Tex. Penal Code § 22.02(a)(2), and felony murder, *id.* § 19.02(b)(3), second-degree and first-degree felonies, respectively.  *See id.* §§ 19.02(c), 22.02(b).  Based on the allegations, appellant faces a maximum punishment range of five to ninety-nine years' confinement or life imprisonment.  *See id.* § 12.32(a).

7

Although appellant repeatedly asserts that he is merely a "victim" of Ochoa and his "cohorts" and maintains that his actions were "instigated and provoked" by Ochoa,[3] we must view the evidence in the light most favorable to the trial court's ruling. *See Kniatt*, 206 S.W.3d at 664. The record reflects that appellant participated in drug sales in which at least one firearm was present. According to Ochoa, the altercation inside the vehicle began when he decided to leave without purchasing marijuana and was grabbed by one individual and "pistol-whipped" by another. Officers viewing CCTV footage of the incident observed appellant hitting Ochoa from behind with a "metallic object." While Ochoa was in a choke hold, appellant stood over him and pointed the metallic object at him. After the shooting, appellant left a fatally-wounded minor at the emergency room and fled. These facts and the range of punishment should appellant be found guilty support the court's ruling.

## B. *Ability to make bail*

While the defendant's ability to make bail must be considered, it is not controlling. *See* Tex. Code Crim. Proc. art. 17.15(4); *Ex parte Gentry*, 615 S.W.2d 228, 231 (Tex. Crim. App. 1981). Likewise, an inability to make bail does not automatically render the amount excessive. *Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.); *Ex parte Hopkins*, Nos. 03-19-00695-CR, 03-19-00715-CR, 2020 WL 4929775, at *3 (Tex. App.—Austin Aug. 20, 2020, no pet.) (mem. op., not designated for publication). Ability to

---

[3] Appellant devotes a portion of his briefing to arguing that he should not have been charged with felony murder or, alternatively, that his actions were in self-defense. Such arguments are not cognizable in this appeal. *See Ex parte Carter*, 514 S.W.3d 776, 784 (Tex. App.—Austin 2017, pet. ref'd) ("An evidentiary sufficiency challenge may not be raised in a pretrial habeas corpus writ.").

make bail is "only one factor to be considered." *Hopkins*, 2020 WL 4929775, at *3; *see* Tex. Code Crim. Proc. art. 17.15.

"To show that he is unable to make bail, a defendant must show that his funds and his family's funds have been exhausted." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.— Houston [1st Dist.] 2006, no pet.) (internal citations omitted). Unless he does so, he must "usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive." *Id.* Ability to make bail "will not favor bond reduction . . . when the defendant makes vague references to inability to make bond without detailing his specific assets and financial resources." *Cooley v. State*, 232 S.W.3d 228, 236 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Where the assets and savings of an appellant's family, and not his own, are at stake, there may be "little or no incentive for him to appear." *Ex parte Turner*, No. 08-02-00355-CR, 2003 WL 21481026, at *4 (Tex. App.—El Paso June 27, 2003, no pet.) (not designated for publication).

Reyes testified that appellant works in construction and has no vehicles, bonds, trusts, or other "source of money" that he could use to make bond. Both of appellant's parents are employed. No testimony was elicited concerning appellant's or his family members' income or savings. Similarly, there is no evidence in the record pertaining to any family assets other than two properties, the home in which the family lives, for which a value was not given, and a property in Waco worth "less than $100,000." Reyes added that the family had been able to raise $10,000 from family members and would be able to make a bond of $100,000.

Given the absence of specific and detailed evidence concerning appellant's and his family's financial circumstances, the trial court could have concluded that Reyes' testimony was inadequate and that the bail amounts set were reasonable. *See Ex parte Castellanos*,

9

420 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Moreover, although Reyes testified that she had attempted to employ a bail bond company, which had indicated that it would accept the property in Waco as collateral, it is unclear whether the family's residence was offered.

Finally, the trial court could have concluded that Reyes' testimony was not credible. While Reyes testified that appellant had no vehicles, the record reflects that appellant told officers that Ochoa had attempted to leave "his vehicle." Appellant was driving the black Nissan on the day of the incident, and that vehicle and a silver Ford were later observed at appellant's residence. Officers observed drug paraphernalia in "plain view" in both, and the Ford contained a digital Sentry safe, from which the trial court could have concluded that one or both vehicles belonged to appellant, an admitted drug dealer.

## C. *Future safety of victim and community*

At least some evidence in the record suggests that appellant poses a threat to the community. He brought a minor carrying a handgun to participate in drug sales and was captured on video beating Ochoa and pointing a metallic object at him menacingly, reportedly because Ochoa did not wish to purchase marijuana from appellant. The trial court could also have determined that appellant presents at least some danger to Ochoa. The record contains evidence from which the trial court could have inferred that appellant and Nolasco-Campuzano attempted to obtain Ochoa's identity. D.S.'s mother initially told officers that appellant and Nolasco-Campuzano informed her that Ochoa shot her son, and Nolasco-Campuzano showed officers that he had been sent Ochoa's booking photo as well as a text reading, "His name is Beijing bat."

10

**D.**     *Other factors*

Reyes testified that appellant works in construction with his father, lives with her and his three siblings, and has resided in Hays County since birth. His criminal history consists only of two pending charges of marijuana possession. The record is silent as to appellant's previous bond compliance and other outstanding bonds. The sole aggravating fact in the indictment for aggravated assault is appellant's alleged use or exhibition of a deadly weapon. Nothing in the record indicates that the trial court refused to reduce the amounts of bail to ensure appellant's continued incarceration, and we have no basis for inferring such a purpose. See *Montalvo v. State*, 315 S.W.3d 588, 596 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent [appellant] from posting bail."); *Ex parte Davis*, 147 S.W.3d 546, 549 (Tex. App.—Waco 2004, no pet.) ("The record contains nothing to indicate that the trial court rendered its decision on this basis [forcing appellant to remain incarcerated pending trial].").

In light of the considered factors, we conclude that appellant has failed to meet his burden of proving that the bail amounts were excessive. *See Rubac*, 611 S.W.2d at 849. The offenses' natures, circumstances, and ranges of punishment are serious. Reviewed in the light most favorable to the trial court's ruling, the record indicates that appellant and others, in the course of selling drugs, beat Ochoa for declining to make a purchase. When a juvenile, driven to the drug deal by appellant, was fatally shot, appellant dropped him off at the emergency room and fled. Little evidence was presented concerning appellant's or his family's financial condition or ability to make bond. There is also evidence that Reyes may have misrepresented appellant's assets and failed to offer one of the family's principal assets as collateral when

11

attempting to engage a bail bond company. The trial court could additionally have reasonably concluded that appellant and Nolasco-Campuzano had endeavored to identify Ochoa as the shooter and that their efforts demonstrated that they posed a danger to his safety. While appellant has strong family and residency ties, these factors do not outweigh the substantial considerations supporting the trial court's ruling. We conclude that the trial court did not abuse its discretion by refusing appellant's request for reduced bond amounts.

## II.    As-Applied Constitutional Challenge

In his second issue, appellant contends that the felony-murder rule, Subsection 19.02(b)(3) of the Texas Penal Code, is unconstitutional as applied to his case because it allows a "victim" to be charged for the acts of a non-co-conspirator in violation of the Due Process Clause. Without offering authority, appellant asserts, "The Appellant's right to due process is violated when a statute is misused and misapplied to accuse and punish a victim." Alternatively, appellant appears to claim that the affirmative defense of self-defense should apply and that his being charged despite the applicability of the defense "is an unreasonable over-reach [that] violates [his] right to due process under the Fifth and Fourteenth Amendments to the United States Constitution."

Aside from a narrow exception involving separation-of-powers claims made by a government official, *see Ex parte Perry*, 483 S.W.3d 884, 898 (Tex. Crim. App. 2016), pretrial habeas is generally not available "to construe the meaning and application of the statute defining the offense charged" and "may not be used to advance an 'as applied' challenge," *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010); *see Ex parte Vazquez*, 605 S.W.3d 248, 250 (Tex. App.—Austin 2020, pet. ref'd) ("To the extent that [appellant's] brief could be construed as

raising an as-applied challenge to the statute, such a challenge is not cognizable at this time."); *see also Ex parte Carter*, 514 S.W.3d 776, 782–83 (Tex. App.—Austin 2017, pet. ref'd); *Ex parte Paxton*, 493 S.W.3d 292, 302–03 (Tex. App.—Dallas 2016, pet. ref'd). Neither is it available "when the resolution of a claim may be aided by the development of a record at trial." *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010); *see State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (observing that as-applied challenge "is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner.").[4]

Appellant urges us to adopt as the law Judge Alcala's concurrence in *Perry* and find that his claim is cognizable on pretrial habeas. *See* 483 S.W.3d at 918–22 (Alcala, J., concurring) (rejecting "category-of-the-claim approach" and instead "adopt[ing] the approach taken in the lead opinion that looks to the nature of the constitutional right at stake and the particular facts presented"). We may not do as appellant asks. "[A]s an intermediate appellate court, we must follow the binding precedent of the Court of Criminal Appeals." *Gonzales v. State*, 190 S.W.3d 125, 130 n.1 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see* Tex. Const. art. V, § 5(a) (providing that Court of Criminal Appeals is final authority for interpreting criminal law in Texas); *State v. Stevenson*, 993 S.W.2d 857, 867 (Tex. App.—Fort Worth 1999, no pet.) ("Because a decision of the court of criminal appeals is binding precedent, we are

---

[4] Appellant asserts that this case is an exception because "the die is set," and "no matter how much evidence is adduced the basic paradigm will remain the same[:] Mr. Ochoa and his cohorts, in the course of committing aggravated robbery[,] killed the deceased." However, the record is not as clear-cut as appellant suggests. Indeed, it contains conflicting accounts of what occurred inside appellant's vehicle as well as three separate and varying accounts of the gas station's CCTV footage.

compelled to comply with its dictates."). Consequently, we conclude that appellant's as-applied challenge to the felony-murder rule may not be raised on pretrial habeas.[5] We overrule his second issue.

### III.    Facial Constitutional Challenge

In his third issue, appellant contends that the felony-murder rule is facially unconstitutional because it "allows for a conviction in the absen[c]e of an applicable mental state," "creates a mandatory presumption of guilt," and "punishes a defendant as a murderer in the absence of a mental state violating the Due Process Clauses and Cruel and Unusual Punishment Clause of the United States Constitution." Citing *Patterson v. New York*, 432 U.S 197, 201 (1977), and *Morrissette v. United States*, 342 U.S. 246, 250 (1952), he asserts that a "law violates the Due Process Clause if it offends some principle of justice rooted in the traditions and conscience of our people that is ranked fundamental," including the "fundamental ten[et]" that "an injury can amount to a crime if done with intention." He notes that strict-liability offenses are generally disfavored and maintains that where the United States Supreme Court has upheld such statutes, the offenses proscribed were regulatory or directed at "social betterment." *See United States v. Balint*, 258 U.S. 250, 252 (1922).

A party challenging the facial constitutionality of a statute must establish that it "always operates unconstitutionally, in all possible circumstances." *State v. Rosseau*,

---

[5]    The State argues that appellant's claim would more properly be framed as a pretrial challenge to the sufficiency of the evidence proving his guilt. To the extent that appellant's claim is an evidentiary insufficiency challenge, it is likewise not cognizable on pretrial habeas. *See Carter*, 514 S.W.3d at 782; *Ex parte Paxton*, 493 S.W.3d 292, 303 (Tex. App.—Dallas 2016, pet. ref'd) (issue was not cognizable where "resolving it would require that we construe the statute under which appellant is charged, it would require us to resolve disputed factual controversies, and it would require us to apply the statute to appellant's particular circumstances notwithstanding the existence of an adequate remedy by appeal after trial.").

14

396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *see Lykos*, 330 S.W.3d at 908 (observing that appellant making facial constitutional challenge must prove that statute "can never be constitutionally applied" to any defendant, "no matter what the individual facts and circumstances of the particular case"); *McCain v. State*, 582 S.W.3d 332, 346 (Tex. App.—Fort Worth 2018, no pet.) ("To call a statute unconstitutional 'on its face' is to claim that the statute, by its terms, always operates unconstitutionally."). The party challenging the statute has the burden to establish its unconstitutionality. *Rosseau*, 396 S.W.3d at 557. In determining whether a statute is constitutional on its face, we presume that it is valid and that the Legislature "did not act arbitrarily or unreasonably in enacting it." *Id.*; *see Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). We consider the statute only as it is written, not how it operates in practice. *See Lykos*, 330 S.W.3d at 908. If the statute is capable of two constructions, only one of which is constitutionally valid, we will "give to it the interpretation that sustains its validity." *Granviel*, 561 S.W.2d at 511. Given the challenger's heavy burden and the presumption of statutory validity, such challenges are "extremely difficult to prove." *Lykos*, 330 S.W.3d at 909; *see Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) ("A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid.").

### A.     *Mens rea requirement*

Appellant is correct that the "traditional rule" holds that "offenses that require no mens rea generally are disfavored." *Staples v. United States*, 511 U.S. 600, 606 (1994). However, "an equally well-established principle, although of more recent vintage, is that '(t)he constitutional requirement of due process is not violated merely because mens rea is not a

15

required element of a prescribed crime.'" *United States v. Ayo-Gonzalez*, 536 F.2d 652, 657 (5th Cir. 1976) (quoting *United States v. Greenbaum*, 138 F.2d 437, 438 (3d Cir. 1943)). The United States Supreme Court has "never articulated a general constitutional doctrine of mens rea." *Powell v. Texas*, 392 U.S. 514, 535 (1968). Indeed, the Court has repeatedly recognized that statutes are not rendered unconstitutional solely by virtue of lacking a culpable mental state. *See, e.g.*, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978) ("[S]trict-liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements." (citing *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57 (1910))); *Lambert v. California*, 355 U.S. 225, 228 (1957) ("We do not go with Blackstone in saying that a 'vicious will' is necessary to constitute a crime . . . for conduct alone without regard to the intent of the doer is often sufficient."); *McNeely v. United States*, 874 A.2d 371, 385 (D.C. 2005) ("A great weight of case law rejects the notion that there is a constitutional bar to strict liability crimes or a prohibition against imprisonment for conviction on a strict liability basis.").

The Court has maintained that legislative intent is dispositive of the constitutionality of statutory offenses lacking mens rea. *See Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019) ("Whether a criminal statute requires the Government to prove that the defendant acted knowingly is a question of congressional intent."); *Staples*, 511 U.S. at 606 (suggesting that "some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime"); *Lambert*, 355 U.S. at 228 ("There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition."); *see also Chicago B. & Q. Ry. v. United States*, 220 U.S. 559, 578 (1911) ("The power of the legislature to declare an offense, and exclude the elements of knowledge and due diligence from any inquiry as to its commission, cannot, we think, be

questioned."); *United States v. Morales-Palacios*, 369 F.3d 442, 446 (5th Cir. 2004) ("[W]here a statute is silent as to intent, it becomes a question of legislative intent to be construed by the court."); *Greenbaum*, 138 F.2d at 438 (stating that whether proof of mens rea is required "depends upon the legislative intent evidenced by the statute which defines and punishes the particular offense.").

The Court of Criminal Appeals has recognized "the clear legislative intent to plainly dispense with a culpable mental state" in Subsection 19.02(b)(3). *Lomax v. State*, 233 S.W.3d 302, 305 (Tex. Crim. App. 2007) (citing *Aguirre v. State*, 22 S.W.3d 463, 470 (Tex. Crim. App. 1999)); *see* Tex. Penal Code § 6.02(b) (if definition of offense "does not prescribe a culpable mental state," culpable mental state "is nevertheless required unless the definition plainly dispenses with any mental element"). In reaching its conclusion in *Lomax*, the Court noted, "It is significant and largely dispositive that Section 19.02(b)(3) omits a culpable mental state while the other two subsections in Section 19.02(b) expressly require a culpable mental state." *Lomax*, 233 S.W.3d at 304. The Court also explained that "[w]hile Section 19.02(b)(3) might contain some features not normally associated with 'strict liability' offenses, on balance these features do not overcome the clear legislative intent to plainly dispense with a culpable mental state." *Id.* at 305. Specifically, Subsection 19.02(b)(3) still requires a defendant to commit a felony involving a clearly dangerous act, which necessitates "some element of 'voluntariness.'" *Id*. at 305 n.7. Lastly, the Court asserted that deciding that Subsection 19.02(b)(3) dispenses with a culpable mental state "is consistent with the historical purpose of the felony-murder rule, the very essence of which is to make a person guilty of an 'unintentional' murder when he causes another person's death during the commission of some type of a felony." *Id.* at 305.

17

Consequently, because the Legislature intended to dispense with a culpable mental state in defining felony murder under Subsection 19.02(b)(3), the lack of a mens rea requirement does not render the statute facially unconstitutional.

### B. *Presumption of guilt and cruel and unusual punishment*

Turning to appellant's remaining arguments in his third issue, he has failed to brief adequately his contentions that the felony-murder rule creates a mandatory presumption of guilt and punishes defendants convicted under the statute in violation of the Eighth Amendment. His brief contains no legal argument or citation to authorities to support either assertion. To the extent that appellant intended such arguments as independent issues, we overrule them as inadequately briefed. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Lucio v. State*, 353 S.W.3d 873, 877–78 (Tex. Crim. App. 2011) (holding issue inadequately briefed when brief contained single-sentence assertion unaccompanied by argument or citation to authorities); *see also Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (affirming that "an appellate court has no 'obligation to construct and compose [an] appellant's issues, facts, and arguments with appropriate citations to authorities and to the record'" (quoting *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)); *Serrano v. State*, No. 03-15-00654-CR, 2017 WL 4228717, at *7 (Tex. App.—Austin Sept. 21, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant's assertion that evidence was insufficient with mere cite to seminal case did not suffice to comply with briefing requirements).

For the foregoing reasons, we overrule appellant's third issue.

**CONCLUSION**

Having overruled all of appellant's issues, we affirm the order of the trial court.

_____

Edward Smith, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   July 15, 2022

Publish